14

The State, ex rel. Klapp, Pros. Atty., Appellant, *v.* The Dayton Power & Light Co. et al., Appellees.

[Cite as State, ex rel. Klapp, v. Dayton P. & L. Co., 10 Ohio St. 2d 14.]

(No. 40544—Decided March 29, 1967.)

*Mr. Richard K. Wilson,* director of law, *Mr. Haveth E. Mau* and *Mr. Robert Houston French,* for appellant.

*Messrs. Shipman, Utrecht & Dixon, Mr. James C. Utrecht, Mr. Julian de Bruyn Kops* and *Mr. J. R. Newlin,* for appellees.

ZIMMERMAN, J. The determinative question for decision is whether the city of Piqua has the right to terminate the use of its streets, alleys, etc., by The Dayton Power & Light Company in furnishing electric energy to persons, firms and corporations located within the corporate limits of the municipality without submitting the matter to the Public Utilities Commission in compliance with the provisions of Sections 502-2 and 504-3, General Code, commonly known as the Miller Act. Those sections, without substantial change, are now Sections 4905.20 and 4905.21, respectively, Revised Code.

Section 4905.20 reads:

"No * * * public utility as defined in Section 4905.02 of the Revised Code furnishing service or facilities within this state, shall abandon or be required to abandon or withdraw any main * * * electric light line * * * or any portion thereof, pumping station, generating plant, power station * * * or service station

of a public utility, or the service rendered thereby, which has once been laid, constructed, opened, and used for public business, nor shall any such facility be closed for traffic or service thereon, therein, or thereunder except as provided in Section 4905.21 of the Revised Code.''

And, then, Section 4905.21 recites:

''Any * * * public utility or political subdivision desiring to abandon or close, or have abandoned, withdrawn, or closed for traffic or service all or any part of any line, pumping station, generating plant, power station * * * or service station, referred to in Section 4905.20 of the Revised Code, shall make application to the Public Utilities Commission * * *.''

In support of the city's claimed right of ouster, it relies strongly on Section 3, Article XVIII of the Constitution of Ohio, the so-called home-rule amendment, its charter, Section 4, Article XVIII of the Constitution, empowering municipalities to ''acquire, construct, own, lease and operate within or without its corporate limits, any public utility,'' etc., and a Piqua ordinance of 1884 permitting the predecessor of The Dayton Power & Light Company to use the streets of that municipality for poles and wires for the transmission of electricity, which ordinance it is claimed constitutes a terminable franchise of a contractual nature, eliminating the application of the so-called Miller Act.

It hardly seems necessary to discuss in detail the various factors involved in the instant case. That has been adequately and comprehensively done with a historical background in the first three cases cited in the statement of the case, and we are in accord with the conclusions reached therein.

Again, in the last analysis, the real issue here is: Does the Miller Act apply? If it does, the city must lose.

Prior to the Miller Act, aggravating conflicts arose between municipalities and public utilities carrying on their businesses within the confines of the municipalities relating to the installation, maintenance and operation of the utilities' facilities, and considerable litigation arose because of those disputes. Some of the illustrative cases are collected and cited in *Grandview Heights v. Columbus*, 174 Ohio St. 473, 190 N. E. 2d 453.

Certainly, an important purpose of the Miller Act was to

place such disputes, affecting the public interest generally, before the Public Utilities Commission as the agency best adapted to resolve them initially.

Sections 4905.20 and 4905.21 are plainly worded and constitute regulatory measures of general application throughout Ohio. They were enacted under the police power of the state for the benefit of the public as a whole, including the residents of Piqua. It is well settled that police and similar regulations of a municipality must yield to general laws of statewide scope and application as represented by the Miller Act. *Cleveland Telephone Co.* v. *Cleveland,* 98 Ohio St. 358, 121 N. E. 701, and *State, ex rel. Arey,* v. *Sherrill, City Mgr.,* 142 Ohio St. 574, 53 N. E. 2d 501, paragraphs one and two of the syllabus.

Surely, statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations adopted in the exercise by a municipality of the powers of local self-government. *Beacon Journal Publishing Co.* v. *Akron,* 3 Ohio St. 2d 191, 195, 209 N. E. 2d 399, 402.

Our conclusion is that the action of the city of Piqua in seeking to compel The Dayton Power & Light Company to remove its poles, wires and equipment from the streets and ways of the municipality and abandon its service locally is subject to the provisions of the Miller Act, and hence this action in quo warranto, bypassing the Miller Act, is not maintainable.

We agree with the several holdings of the Court of Appeals, and its last judgment rendered herein, from which this appeal is taken, is affirmed.

*Judgment affirmed.*

TAFT, C. J., MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.