[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 521.]

CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v*. PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Cleveland Elec. Illum. Co. v. Pub. Util. Comm*., 1996-Ohio-298.]

*Public Utilities Commission—Dismissal of complaint filed by electric company
alleging violation of Certified Territory Act—Order reversed by Supreme
Court and cause remanded to commission to proceed with hearing, when.*

The Public Utilities Commission has jurisdiction to consider a complaint alleging
that a sale of electricity was initiated by a utility to a retail user using a straw
man to effectuate the deal for the sole purpose of circumventing the
Certified Territory Act.

(No. 95-2444—Submitted June 5, 1996—Decided August 21, 1996.)

APPEAL from the Public Utilities Commission of Ohio, No. 95-458-EL-UNC.

———————————

{¶ 1} This appeal arose from an order of the Public Utilities Commission of
Ohio ("commission") that dismissed a complaint filed by appellant, Cleveland
Electric Illuminating Company ("CEI"). In its complaint, CEI alleged that
American Electric Power ("AEP"), using its subsidiary, intervening appellee Ohio
Power Company ("OPC"), sold electricity through Cleveland Public Power
("CPP"), and that CPP in turn sold the electricity to intervening appellee Medical
Center Company ("MCC"), in violation of the Certified Territory Act.[1] In other
words, CEI claims that AEP, through its subsidiary OPC, allegedly sold electricity
in CEI's territory.

---

1. The Certified Territory Act is set out in R.C. 4933.81 *et seq*. Essentially the Certified Territory
Act provides that with the exception set out under Article XVIII of the Ohio Constitution (home
rule), each electrical supplier is assigned a certain territory where it has the exclusive right to provide
service.

**{¶ 2}** Originally, MCC purchased power from CEI and redistributed it to some of its member/owners.[2] MCC was a retail customer of CEI at that time. MCC requested that CEI convert it from a retail customer to a wholesale customer. CEI apparently denied the change. MCC notified CEI that on September 1, 1996, MCC would terminate service with CEI and acquire its power from CPP.

**{¶ 3}** On May 3, 1995 CEI filed a complaint with the commission against MCC, AEP and its generating subsidiaries, including OPC.[3] *In re CEI*, case No. 95-458-EL-UNC.

**{¶ 4}** Count one of the complaint alleged that OPC "has arranged to furnish service to [MCC] by selling 50 MW of capacity and associated energy to [CPP]." CEI further alleged that the OPC/CPP transaction and the CPP/MCC transaction "are two halves of the same transaction." CEI alleges that these two transactions "are sham transactions" and were structured to circumvent the Certified Territory Act. Thus, CEI contends OPC will violate the Certified Territory Act by selling power to MCC.

**{¶ 5}** In count two, CEI alleged that MCC may be an electric light company as defined in R.C. 4905.03(A)(4) because it resells electricity to its member/owners. CEI further supports this claim by alleging that MCC intends to build additional facilities to take power at transmission voltages, to change its billing methodology and to sell electricity to non-member/owners, which will make MCC, if it is not already, an electric light company under Ohio law.

---

2. MCC's member/owners included University Hospitals of Cleveland, Case Western Reserve University, the Cleveland Museum of Art, the Church of the Covenant, the Musical Arts Association, the Cleveland Botanical Garden, the Cleveland Hearing & Speech Center, the Cleveland Medical Library Association and the Cleveland Institute of Art.

3. For purposes of this opinion, Ohio Power Company has acted on behalf of its parent, American Electric Power.

**{¶ 6}** Count three alleged that CEI installed generation and distribution systems in reliance on continued service to MCC and its members, and that CEI will suffer financial loss because of the stranded investment associated with MCC leaving CEI's system.

**{¶ 7}** OPC and MCC filed separate motions to dismiss CEI's complaint, alleging in part that the OPC/CPP power purchase agreement was a wholesale transaction that is exclusively under the jurisdiction of the Federal Energy Regulatory Commission ("FERC").[4] CEI has initiated a FERC action seeking to invalidate the agreement for the sale of electricity from OPC to CPP. *Petition of Cleveland Elec. Illum. Co.*, FERC Docket No. EL 96-9-000. OPC and MCC also argued that the Certified Territory Act does not prevent wholesale transactions such as the sale between OPC and CPP. CEI countered the motions to dismiss, contending that the issue before the commission was not the OPC/CPP wholesale transaction individually or the CPP/MCC exempt municipal agreement individually, but rather the "de facto retail" sale between OPC and MCC.

**{¶ 8}** After reviewing the various arguments by the parties, the commission dismissed CEI's complaint, stating:

"Pursuant to Article XVIII, Section 4, of the Ohio Constitution, municipalities in Ohio may own and operate public utilities and may 'contract with others for any product or service.' Moreover, the certified territory statutes (Sections 4933.81-.84, Revised Code) specifically carve out an exception for municipal utilities regarding application of certified territories. Thus, even construing CEI's allegations in this case as true, the existing constitutional and statutory constraints preclude granting the relief sought by CEI. Based on our

---

4. Pursuant to the Federal Power Act, Section 824, Title 16, U.S. Code, FERC has jurisdiction to regulate the "sale of electric energy at wholesale," defined as "a sale of electrical energy to any person for resale." Section 824(d), Title 16, U.S. Code.

assessment of the agreed-upon facts and the law, we do not believe that a hearing is warranted or necessary in this case to resolve the strictly jurisdictional issues raised in CEI's complaint."

{¶ 9} Thus, the commission dismissed CEI's complaint because it determined that it did not have jurisdiction over either of the two agreements pertaining to the sale of electricity—the OPC\CPP agreement and the CPP\MCC agreement.

{¶ 10} The cause is before this court upon an appeal as of right.

————————————

*Jones, Day, Reavis & Pogue, Paul T. Ruxin* and *Helen L. Liebman*, for appellant, Cleveland Electric Illuminating Company.

*Betty D. Montgomery*, Attorney General*, Duane W. Luckey* and *Steven T. Nourse,* Assistant Attorneys General, for appellee, Public Utilities Commission.

*Bell, Royer & Sanders Co., L.P.A.,* and *Barth E. Royer,* for intervening appellee Medical Center Company.

*Edward J. Brady, Marvin I. Resnik* and *Kevin F. Duffy,* for intervening appellee Ohio Power Company.

*Chester, Willcox & Saxbe, John W. Bentine* and *Jeffery L. Small*, urging affirmance for *amicus curiae*, American Municipal Power-Ohio, Inc.

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., John R. Climaco, Anthony J. Garofoli, Glenn S. Krassen* and *Joseph M. Hegedus,* urging affirmance for *amicus curiae*, city of Cleveland.

————————————

**STRATTON , J.**

{¶ 11} The issue to be decided today is, in determining a motion to dismiss a complaint before the commission alleging a violation of the Certified Territory Act, can the commission look beyond two individual contracts, over which the

commission admittedly has no jurisdiction, to determine whether the totality of the evidence alleges a potential violation of the Certified Territory Act?

**{¶ 12}** Our review of this issue is a question of law. Accordingly, we address this issue using a *de novo* standard of review. *Indus. Energy Consumers of Ohio Power Co. v. Pub.Util. Comm*. (1994), 68 Ohio St. 3d 559, 563, 629 N.E. 423, 426.

I.

Standard for Dismissal for Failure to State a Claim

**{¶ 13}** In a civil case before a court, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery" before a motion to dismiss can be granted. *O'Brien v. University Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. Further, in ruling on the motion to dismiss, all material factual allegations of the complaint must be taken as true. See *Vail v. Plain Dealer Publishing. Co.* (1995), 72 Ohio St. 3d 279, 649 N.E. 2d 182. The commission has adopted the same standard in reviewing motions to dismiss brought under R.C. 4905.26, *i.e.*, that all of the complainants' factual allegations must be taken as true. *In re Toledo Premium Yogurt v. Toledo Edison Co*. (Sept. 17, 1992), case No. 91-1528-EL-CSS, at 2.

**{¶ 14}** The present case is brought under R.C. 4933.83 of the Certified Territory Act. Thus, the holding in *Toledo Premium Yogurt* is not directly on point in this case. However, the commission's order of dismissal in this matter indicated that it had accepted all CEI's allegations as true. Accordingly, the commission must accept all allegations as true in determining whether to dismiss a complaint brought under the Certified Territory Act.

**{¶ 15}** In its complaint, CEI alleged that "AEP negotiated directly with Medical Center, either on its own or in conjunction with Cleveland, regarding the 50 MW sale and purchase." CEI also alleged:

"The 50 MW transaction between AEP and Cleveland, and the 50 MW transaction between Cleveland and Medical Center, are two halves of the same transaction. The purchase is in reality a purchase from AEP, and the service provided by Cleveland, a wheeling service to effectuate the Medical Center purchase."

**{¶ 16}** If the above allegations claimed by CEI are taken as true, as is required by the commission's own standards in evaluating a motion to dismiss, then CEI's complaint must survive a motion to dismiss. While the commission may not have jurisdiction over either the OPC/CPP contract or the CPP/MCC contract individually, the totality of the evidence could indicate that the real intention of the deal was to transfer electricity from OPC to MCC using two independent transactions, which would violate the Certified Territory Act.

**{¶ 17}** In such an instance, the commission must look beyond the surface of the two contracts to see if there was an underlying deal between OPC and MCC, thereby establishing a prima facie case of a violation of the Certified Territory Act.

**{¶ 18}** As previously mentioned, the commission's primary reasoning for dismissing this case was its perceived lack of jurisdiction. Specifically, the commission found that it did not have jurisdiction because the CPP/MCC transaction was exempt from being subject to the Certified Territory Act. The commission apparently made a cursory review of count two of CEI's complaint as to whether MCC was an electrical supplier. There was no analysis of count three of CEI's complaint. Therefore, upon remand, the commission should consider CEI's complaint in its entirety.

**{¶ 19}** It is important to note that we make no determination as to the existence or sufficiency of evidence as to the merits of any of CEI's allegations.

Such a determination is for the commission alone to make. However, the fact that at least facially, two discrete transactions were used in this purchase should not prevent the commission from determining whether the purchase comports with the Certified Territory Act when viewed in its entirety.

## II.

### FERC's Jurisdiction

{¶ 20} The import of this decision does not require the commission to improperly regulate an area where the federal government has preempted the field with regard to the FERC's regulation of wholesale power transactions. The commission's review will be of the entire alleged transaction from OPC to MCC by way of CPP, not an analysis of the OPC/CPP contract. Thus, the commission would not be encroaching into FERC's jurisdiction over the OPC/CPP contract.

{¶ 21} Further, in *Fed. Power Comm. v. S. California Edison Co.* (1964), 376 U.S. 205, 215-216, 84 S. Ct. 644, 651, 11 L. Ed. 2d 638, 646, the Supreme Court stated:

"*** Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction ***. This was done in the [Federal] Power Act making [FERC] jurisdiction plenary and extending it to all wholesale sales in interstate commerce *except those which Congress has made explicitly subject to regulation by the States.*" (Emphasis added.)

{¶ 22} Section 824k(h), Title 16, U.S. Code (prohibition on mandatory retail wheeling and sham transactions) states: "Nothing in this subsection shall affect any authority of any State or local government under state law concerning the transmission of electric energy directly to an ultimate consumer." In examining the alleged sham transaction (the alleged deal between OPC and MCC by way of CPP), the commission will be scrutinizing whether OPC has made a retail deal with

MCC. As stated above, retail deals are explicitly excluded from FERC's exclusive jurisdiction.

III

A Municipality's Rights pursuant to Section 4, Article XVIII of the Ohio Constitution

**{¶ 23}** Under Article XVIII, municipalities have certain powers, including the authoritiy to "acquire *** any public utility the products or service of which is or is to be supplied to the manicipality or its inhabitants, and may contract with others for any such product or service." Section 4, Article XVIII of the Ohio Constitution. The Certified Territory Act excepts from its coverage muncipalities acting pursuant to Article XVIII of the Ohio Constitution. R.C. 4933.83(A). However, this court' decision does not eviscerate a manicipality's powers to buy or sell electricity under Article XVIII, of the Ohio Constitution. That is not a result of this opinion, nor should it be the practical result. Rather, this decision is to prevent a utility from circumventing the Certified Territory Act by selling electricity to an entity to which it cannot sell under the Act, by inserting a straw man to legitimize the deal. It is only in a fact-specific situation such as the case at bar, where the complaint alleges that there was an agreement between OPC and MCC to sell electricity from OPC to MCC using CPP as the straw man conduit, that the commission has jurisdiction to hear a complaint alleging a violation of the Certified Territory Act. Failure to reach this narrow factual threshold will result in a failure to state a claim upon which relief could be granted.

**{¶ 24}** The commission is free to find, based on the evidence, that each transaction stands on its own merit and was not merely a sham transaction, and that each contractual transaction must be honored regardless of whether the other contract proceeds. Essentially, this decision should provide a delicate balance by preserving a municipality's right to freely purchase electricity pursuant to the Ohio Constitution, yet preventing utilities from eviscerating the Certified Territory Act

on the rare occasion *when there is evidence* that shows that a utility has used a straw man to effectuate a sale of electricity for the sole purpose of circumventing the Certified Territory Act. Accordingly, we hold that the Public Utilities Commission has jurisdiction to consider a complaint alleging that a sale of electricity was initiated by a utility to a retail user using a straw man to effectuate the deal for the sole purpose of circumventing the Certified Territory Act.

## IV

## Conclusion

**{¶ 25}** Within these narrow definitions, we find that CEI's complaint sets out sufficient allegations to withstand a motion to dismiss for lack of jurisdiction. The commission failed to take the essence of CEI's allegations as true for purposes of a motion to dismiss, relying solely on its technical analysis of a lack of jurisdiction over the separate transactions.

**{¶ 26}** Therefore, the court reverses the commission's dismissal of CEI's complaint and remands the cause to the commission with instructions to reinstate CEI's complaint and proceed with a hearing on the same.

*Order reversed*

*and cause remanded.*

DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs separately.

MOYER, C.J., and RESNICK, J., dissent.

---

**DOUGLAS, J., concurring.**

**{¶ 27}** I agree with the well-reasoned and enlightened judgment of the majority. I write separately to address the dissent. Reading the majority opinion and the dissent together, one wonders if we are talking about the same case. Contrary to what the dissent may imply, all that the majority decides today is that

the Public Utilities Commission of Ohio ("PUCO") must hold a hearing to determine whether American Electric Power ("AEP") and its subsidiary, Ohio Power Company ("OPC"), created a sham transaction in consort with Cleveland Public Power ("CPP") to sell electricity to Medical Center Company ("MedCo") in violation of the Certified Territory Act.

**{¶ 28}** Both the majority and dissent are agreed that a *direct* sale of electricity from OPC to MedCo would be a violation of R.C. 4933.83.  R.C. 4933.83(A), of the Certified Territory Act, guarantees each electric supplier "the exclusive right to furnish electric service to all electric load centers [*i.e.*, customers] located presently or in the future within its certified territory * * *."  In this case, the exclusive right to furnish electricity to MedCo (a load center or customer within the meaning of section R.C. 4933.81[E] of the Certified Territory Act) belongs to Cleveland Electric Illuminating Company ("CEI").  Thus, OPC, which is a competitor of CEI, may not invade CEI's exclusive territory.

**{¶ 29}** The Certified Territory Act (R.C. 4933.81 *et seq.*), however, explicitly carves out an exception for municipal utilities regarding the application of the Act.  It is well established that, pursuant to Section 4, Article XVIII of the Ohio Constitution, municipalities may own and operate public utilities "the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service."  *Akron v. Pub. Util. Comm.* (1948), 149 Ohio St. 347, 37 O.O. 39, 78 N.E.2d 890; *Pfau v. Cincinnati* (1943), 142 Ohio St. 101, 26 O.O. 284, 50 N.E.2d 172*; E. Ohio Gas Co. v. Pub. Util. Comm.* (1940), 137 Ohio St. 225, 18 O.O. 10, 28 N.E.2d 599; *Columbus Bd. of Edn. v. Columbus* (1928), 118 Ohio St. 295, 160 N.E. 902.  Therefore, the municipality in the case herein is excepted from the Certified Territory Act when it operates CPP, its own utility, for the purpose of generating power to serve the municipality or its inhabitants.  It may also secure by contract from another utility a product or service for the municipality's needs.

**{¶ 30}** However, this does not permit a municipal utility to act merely as a conduit for the transfer of electricity from an outside utility into the municipality. If this were permissible, then a municipality could set up a public utility operation, acquire power from an outside utility, and convey that power to its municipal inhabitants without ever operating a generating facility. This would result in the negating of the laudatory purposes of the Certified Territory Act. Clearly, this would be impermissible.

**{¶ 31}** The dissent calls MedCo's activities an "artful compliance." The dissent makes, I believe, the majority's point. What we and the commission should be concerned with is whether AEP, OPC, CPP and MedCo have "artfully" or otherwise created a series of transactions which, taken together, contravene the laws of this state.

**{¶ 32}** The PUCO was specifically created by the Ohio legislature to handle these types of issues, and it has the expertise to do so. Thus, we grant the commission permission to review such matters. The dissent broadens our order for a hearing into the proposition that a municipality cannot buy electricity from other electric power providers.

**{¶ 33}** The majority opinion does not say that a municipality may not contract with an outside supplier of power to satisfy its needs. A home-rule municipality may still elect not to contract with its local public utility to supply the municipality's energy requirements. What the majority is saying, however, is that when, as here, allegations of foul play are made, the PUCO may look beyond two individual contracts to determine whether the totality of the contracts evidences a sham transaction in direct violation of the Certified Territory Act. That is *all* the majority opinion holds. The other issues are left to another day when they are properly presented in cases coming before the court. Accordingly, I concur.

———————————

**MOYER, C.J., dissenting.**

**{¶ 34}** Because the majority decision applies Section 4, Article XVIII of the Ohio Constitution and the Certified Territory Act ("Act") in violation of plain language and certain intent, I must respectfully dissent.

**{¶ 35}** CEI acknowledges that the commission has no jurisdiction over either the Ohio Power/CPP contract or the CPP/MedCo contract. Yet CEI asked the commission, and now this court, to look beyond this lack of jurisdiction and recognize a cause of action under the Act. Simply put, MedCo's artful compliance with the plain words in the Act to reduce its energy costs does not violate the Act and does not create an actionable claim under the facts presently before the commission or this court. The majority decision reaches beyond the allegations contained in CEI's complaint to create an allegation that there actually is a contract between Ohio Power and MedCo: the only possible factual circumstance which could violate the Act and give rise to a cause of action between these parties.

**{¶ 36}** Section 4, Article XVIII of the Ohio Constitution provides:

"*Any municipality may* acquire, construct, *own, lease and operate* within or without its corporate limits, *any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * * *"* (Emphasis added.)

**{¶ 37}** Until today this provision meant that a municipality could choose to contract with *any* wholesale energy provider for the provision of energy to the municipal inhabitants. This is the situation no longer.

**{¶ 38}** Moreover, the Act expressly provides:

"* * * In the event that a municipal corporation refuses to grant a franchise or contract for electric service within its boundaries to an electric supplier whose certified territory is included within the municipality, *any other electric supplier may serve the municipal corporation under a franchise or contract with the municipal corporation.*" (Emphasis added.) R.C. 4933.83(A).

**{¶ 39}** The plain words of the statute have, until today, meant that a home-rule municipality could elect not to contract with its local public utility to supply the municipality's energy requirements but, instead, could contract with any other energy provider of its choice to supply those needs.

**{¶ 40}** The majority decision will have the effect of diminishing these rights of the municipality. It will discourage municipalities from contracting with the Ohio electrical supplier of their choice to satisfy the energy needs of the municipality. If a municipality wishes to purchase energy competitively to supply the needs of its citizens, it must either buy from the local public utility or go outside the state of Ohio to satisfy its energy needs. Home-rule municipalities will be unlikely to satisfy their energy requirements from a nonlocal Ohio energy producer, such as Ohio Power in this case, because such a purchase would create the very real threat of possible Act litigation at the commission by the aggrieved local public utility.

**{¶ 41}** Additionally, Ohio's low-cost energy producers will lose the opportunity to sell large blocks of electric energy in the wholesale market to Ohio's home-rule municipalities. These sales will likely be forced out of state in the face of potential Act litigation by local public utilities. Neither municipal inhabitants nor Ohio's low-cost energy producers benefit from such a circumstance.

**{¶ 42}** The commission is a creature of statute, and, as such, may exercise only that jurisdiction conferred upon it by statute. *Time Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 234, 661 N.E.2d 1097, 1101; *Canton Storage & Transfer Co. v. Pub. Util. Comm.* (1995), 72 Ohio St.3d. 1, 5, 647 N.E.2d 136, 141; *Columbus So. Power Co. v. Pub. Util. Comm.* (1993), 67 Ohio St.3d 535, 537, 620 N.E.2d 835, 838. A complaint that fails to trigger the commission's jurisdiction is subject to dismissal. See *Cincinnati v. Pub. Util. Comm.* (1992), 64 Ohio St.3d

279, 595 N.E.2d 858; *Dayton Communications Corp. v. Pub. Util. Comm.* (1980), 64 Ohio St.2d 302, 18 O.O.3d 478, 414 N.E.2d 109.

{¶ 43} The General Assembly has narrowly prescribed the commission's statutory authority over home-rule municipal utility operations. The commission has express authority over the voluntary and forced abandonment of utility facilities and services inside municipal limits under the Miller Act, R.C. 4905.20 and 4905.21 (*State ex rel. Klapp v. Dayton Power & Light Co.* [1967], 10 Ohio St.2d 14, 39 O.O.2d 9, 225 N.E.2d 230), and the state has the authority to control municipal utility actions in situations involving statewide public health and safety, for example, water fluoridation (*Canton v. Whitman* [1975], 44 Ohio St.2d 62, 73 O.O.2d 285, 337 N.E.2d 766), and approval of sewage projects (*Delaware Cty. Bd. of Commrs v. Columbus* [1986], 26 Ohio St.3d 179, 184, 26 OBR 154, 158-159, 497 N.E.2d 1112, 1117).

{¶ 44} But the commission has no authority over a municipal decision to purchase power from a public utility. Section 4, Article XVIII of the Ohio Constitution provides that municipalities have the right to choose their wholesale energy suppliers. This right is not subject to statutory restriction or to commission review or control. *Link v. Pub. Util. Comm.* (1921), 102 Ohio St. 336, 131 N.E. 796, paragraph two of the syllabus; *In re Complaint of Residents of Struthers* (1989), 45 Ohio St.3d 227, 543 N.E.2d 794, paragraphs one and three of the syllabus. Accord *Lucas v. Lucas Local School Dist.* (1982), 2 Ohio St.3d 13, 2 OBR 501, 442 N.E.2d 449; *Columbus v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 427, 12 O.O. 3d 361, 390 N.E.2d 1201; *Columbus v. Ohio Power Siting Comm.* (1979), 58 Ohio St.2d 435, 12 O.O.3d 365, 390 N.E.2d 1208. Thus, CPP had the constitutional authority to contract with Ohio Power to purchase electrical energy. Moreover, the terms of that contract are not subject to commission review. *Link, supra,* at paragraph two of the syllabus; *In re Complaint of Residents of Struthers,*

*supra*, at paragraph three of the syllabus. See, also, *Wooster v. Graines* (1990), 52 Ohio St.3d 180, 181, 556 N.E.2d 1163.

{¶ 45} CPP also had the exclusive right to contract with and sell electrical energy to MedCo, a retail customer within CPP's service territory. This unfettered right is expressly recognized by the Act:

"[N]othing in [the Certified Territory Act] shall impair the power of municipal corporations to require franchises or contracts for the provision of electric services within their boundaries * * *." R.C. 4933.83(A).

"Nothing contained in [the Act] shall be construed to affect the right of municipal corporations to generate, transmit, distribute, or sell electric energy. The rights and powers of municipal corporations as they exist on or after the effective date of this section to acquire, construct, own, lease, or operate in any manner a public utility or to supply the service or product * * * under Section 4, Article XVIII, Ohio Constitution in any portion of the state is not affected by [the Act]." R.C. 4933.87.

{¶ 46} Thus, the commission had no authority to regulate or otherwise control the CPP / MedCo power agreement.

{¶ 47} More important, jurisdiction over wholesale power purchases like the Ohio Power / CPP agreement has expressly been preempted by federal law. Under the Federal Power Act, Section 824, Title 16, U.S. Code, the FERC has exclusive jurisdiction over the sale of wholesale electric energy. The United States Supreme Court has long ago established the preemptive effect of the Federal Power Act:

"* * * Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction * * *. This was done in the [Federal ] Power Act by making [FERC] jurisdiction plenary and extending it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to

regulation by the States." *Fed Power Comm. v. S. California Edison Co.* (1964), 376 U.S. 205, 215-216, 84 S. Ct. 644, 651, 11 Ed.2d 638, 646. Intrastate wholesale transactions, like the one at bar, are also considered to be made in interstate commerce and preempted by the Federal Power Act. *Fed. Power Comm. v. Florida Power & Light Co.* (1972), 404 U.S. 453, 92 S.Ct. 637, 30 L.Ed.2d 600.

{¶ 48} The majority holds that the commission has concurrent jurisdiction over an alleged sham transaction under the Act. I disagree. If preemption retains any force whatsoever, then the commission cannot have concurrent jurisdiction over this situation. Pursuant to Section 824K(h), Title 16, U.S. Code, the "sham transaction" of which CEI complains is subject to the FERC's jurisdiction. Only the FERC has the authority over this contract. Cf. *Marketing Research Services, Inc. v. Pub. Util. Comm.* (1987), 34 Ohio St.3d 52, 517 N.E.2d 540. In fact, CEI has, understanding this, initiated a FERC proceeding under this section to invalidate the Ohio Power / CPP power contract. *Petition of CEI* (Nov. 2, 1995), FERC Docket No. EL 96-9-000, at 4, 14.

{¶ 49} That is not to say that the commission might not have jurisdiction over this matter at some later date. If the FERC agrees with CEI that this situation constitutes a "sham transaction," the FERC has the authority to strike down the Ohio Power / CPP wholesale power contract. Armed with the FERC's "sham transaction" finding, the commission would then have jurisdiction to determine CEI's damages under the Act. However, absent such a FERC finding, the commission correctly held that it has no right to render any decision related to the substance of a contract that is exclusively within FERC's domain. Cf. *Marketing Research Services, Inc., supra.*

{¶ 50} Even if we could put aside the determinative issue of jurisdiction, the question at the heart of this case is whether Ohio Power and MedCo contracted to sell 50 MW of power in violation of the Act. If CEI alleged that they did, then the complaint was not subject to being dismissed, because the complaint would

have alleged a prima facie violation of CEI's certified territory under the Act. However, the complaint contains no such allegation.

{¶ 51} The complaint alleges in count one that:

(1) Ohio Power "has arranged to furnish electric service to [MedCo] by selling 50 MW of capacity and associated energy to [CPP]";

(2) Ohio Power "negotiated directly with [MedCo] * * * regarding the 50 MW sale and purchase";

(3) CPP will bill MedCo under the same method that Ohio Power was billing CPP for the 50 MW of power;

(4) the Ohio Power / CPP and CPP / MedCo power agreements "are two halves of the same transaction";

(5) these two transactions "are sham transactions" structured to circumvent the Act; and

(6) Ohio Power will violate the Act by selling power through CPP to MedCo.

{¶ 52} Neither the commission nor the court is required to accept allegations in a complaint as true which are contradicted by documents attached to the complaint. See *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 109, 647 N.E.2d 799, 802. The two contracts before us today are totally independent of each other, and fully effectuate the power transfer in question. These contracts do not impose reciprocal obligations upon each other. As a matter of fact, Article 10.3 of the CPP/MedCo agreement specifically states that it creates no third-party beneficiaries and that the only parties to the agreement are CPP and MedCo. CPP is not required to use Ohio Power as the source of its energy under the CPP/MedCo contract. Additionally, CPP is obligated to provide MedCo with all of its energy needs under Article 1.1 of the CPP/MedCo agreement, including any amounts over 50 MW, while Ohio Power, on the other hand, is

obligated only to provide 50 MW to CPP.  Moreover, Article 5.8 of the CPP/MedCo agreement specifically contemplates interconnection with wholesale electric providers other than Ohio Power.  Two halves of a whole?  The documents clearly state otherwise.

{¶ 53} Further, changes in billing practices and methods between a municipality and its retail customers have no meaning under the Act.  Nor do negotiations between MedCo and Ohio Power without some type of contract.  Additionally, every party to this litigation agrees that these two power contracts are not subject to the commission's jurisdiction.  The fact that this alleged "arrangement" is regulated by and subject to a remedy at FERC, under Section 824K(h), Title 16, U.S. Code does not vest the commission with jurisdiction to hear CEI's complaint.

{¶ 54}  Under these circumstances, the commission was free to question the allegations in CEI's complaint and determine that this complaint did not set forth "reasonable grounds for a complaint."  The allegations in count one do not trigger commission jurisdiction.

{¶ 55}  In count two, CEI alleges that:

(1)  although CEI never raised the issue before this complaint, MedCo is an electric light company under Ohio law because it sells the power that it buys from CEI to its member/owners;

(2)  MedCo intends at some point in the future to build additional facilities to take power at transmission voltages, change its billing methodology regarding its member/owners, and sell electricity to non-member/owners;

(3)  these changes will make MedCo, if it is not already, an electric light company under Ohio law; and

(4)   after the changes, MedCo will be selling electricity to its member/owners in violation of the Act.

{¶ 56} Speculative future changes in billing methods to member/owners, the construction of facilities to take power at transmission voltages, and speculation that MedCo may provide electricity to new member/owners do not violate the Act. Nor do they convert a retail customer of over sixty years into an electric supplier that is subject to the Act. Simply stated, speculative future activity which may or may not occur is not the basis for a valid complaint at the commission. *Cleveland v. Pub. Util. Comm.* (1980), 64 Ohio St.2d 209, 216-217, 18 O.O.3d 418, 422-423, 414 N.E.2d 718, 723.

{¶ 57} Additionally, the commission properly stated that electric suppliers (if that is what MedCo is in this case) in existence before January 1, 1977 are exempt from the Act. *In re CEI*, case No. 95-458-EL-UNC, Entry at 7. Therefore, even if MedCo were considered an electric supplier under the Act, MedCo is exempt from the Act until it actually provides energy to new customers or otherwise violates that Act. The commission did not err in determining that there were no reasonable grounds for CEI's complaint. CEI argues here and in its FERC complaint that there is a contract between MedCo and Ohio Power for the sale of 50 MW of electricity and associated power. CEI's complaint simply does not support these arguments. Absent that specific allegation, the commission has no jurisdiction over the Ohio Power / CPP / MedCo power transfer. Even if the complaint included that specific allegation, I seriously question whether the commission has jurisdiction over this power transfer in light of the Federal Power Act's jurisdiction over "sham transactions" under Section 824K(h), Title 16, U.S. Code, and the acknowledged lack of jurisdiction by the commission over either power contract.

{¶ 58} For the foregoing reasons, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

———————————