DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a decision of the Lucas County Court of Common Pleas granting a directed verdict in favor of appellee, the Salvation Army, in a tort case involving appellant, Sally Powers, a customer, who fell while on the business premises.[1] Because we conclude that the trial court's ruling was proper, we affirm.
 {¶ 2} Trial testimony established that Sally Powers ("Powers") and her elderly mother were regular customers of the Salvation Army thrift store located at the corner of Manhattan Avenue and Stickney Avenue, Toledo, Ohio. On the day in question, November 27, 2000, when they arrived at the store at 5:55 p.m., it was dark. Powers parked near a light pole in the parking lot, about 20 feet from the entrance. Although there was no lighting directly outside the store entrance, the front area of the store was lit by ceiling lights inside the vestibule area between the outer and inner sets of glass doors. Powers said that, as she walked from the car to the store, she could "see where I was going," as she recognized and spoke to a woman friend who had just left the store.
 {¶ 3} Powers testified that, as she approached the entrance, she noticed "a man standing out with a [flatbed] cart" used to carry items into or out of the store. Powers testified that she visited the store on the average of two times per week and had seen the cart at the store before. She said that as soon as she and her mother entered, an employee informed her that the store was closing early. She was in the store no more than "five to six minutes." After leaving by way of the inside set of doors to the entry way, Powers saw "a man's * * * face in the door on the glass that was the last exit door," the same man she had seen earlier by the cart. Powers said she "tried to gently open" the outside door and "was looking at the man so I wouldn't hit him [to] try to get by him safely without hitting him with the door." She stepped around him to her left, and immediately fell over something about a foot off the ground. After she fell, she saw the object she had run into, the flatbed cart which had been placed several feet in front of the entrance doors.
 {¶ 4} On cross-examination, Powers acknowledged that she was "just assuming that it was the cart that I saw with the guy in the parking lot." She said that the cart was "behind the man" as he stood facing her in front of the door. Powers did not know the man or if he was an employee of the store.
 {¶ 5} Medical testimony was presented that Powers broke her elbow and had subsequent surgery. Alan Powers also testified regarding the effect of his wife's injuries on his daily activities and in support of his loss of consortium claim.
 {¶ 6} Patrick Wilson, the administrator for the Salvation Army adult rehabilitation center, testified that Judy Barlew was the manager of the thrift store at the time of Powers' fall. He said that although the "Guide to Thrift Store Operations" instructed employees to prevent accidents, it did not contain any official policy requiring flatbed carts to be accompanied by employees when customers used them. He acknowledged that he would not expect an employee to leave a cart in front of an exit or entryway to the store.
 {¶ 7} The manager, Judy Barlew, testified that the particular cart used at the store was actually on loan from her and was usually kept in the back room when not in use. She said she permitted donors, customers, and employees to use the cart. On the days she was working, Powers asked that an employee accompany customers while using the cart. She noted that this was her own policy, not the store's, and was to prevent theft of the cart, rather than to provide customer safety. Barlew usually left the store by 5:30 p.m. and was not present on the date of Powers' fall. She said that she had no idea whether her policy was enforced by the evening manager or employees.
 {¶ 8} At the close of Powers' case-in-chief, the Salvation Army moved for directed verdict on the basis of Powers' failure to establish either negligence on the part of an employee or constructive notice by the Salvation Army of the cart's placement. The trial court granted the motion.
 {¶ 9} Powers and her husband now appeal that judgment, arguing the following sole assignment of error:
 {¶ 10} "The trial court erred in granting Appellee's motion for directed verdict on the sole ground that Appellee had no knowledge of the dangerous condition, where the evidence adduced at trial sufficiently established that the dangerous condition was created by Appellee's employees."
 {¶ 11} A trial court will grant a motion for directed verdict if, "after construing the evidence most strongly in favor of the party against whom the motion is directed, * * * reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). The "reasonable minds" test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantial probative value that favors the position of the nonmoving party. Civ.R. 50(A)(4); Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69.
 {¶ 12} "A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." O'Day v. Webb (1972),29 Ohio St.2d 215, paragraph three of the syllabus. To support a proposition so as to withstand a motion for directed verdict, a plaintiff may not rely on the stacking of inferences. See Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 332. "[I]t is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. * * * Such a process may be described as drawing an inference from an inference, and is not allowable. At the beginning of every line of legitimate inferences there must be a fact, known or proved." Id. On review of questions of law, an appellate court applies a de novo standard of review. Cleveland Elec. Illum. Co. v. Pub.Util. Comm. (1996), 76 Ohio St.3d 521, 523.
 {¶ 13} To prove negligence, a plaintiff must establish a duty, breach of that duty, injury and causation. Mussivand v. David (1989),45 Ohio St.3d 314, 318. In Paschal v. Rite Aid Pharmacy, Inc., (1985),18 Ohio St.3d 203, the Ohio Supreme Court held that:
 {¶ 14} "A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. See,Campbell v. Hughes Provisions Co. (1950), 153 Ohio St. 9. A shopkeeper is not, however, an insurer of the customer's safety." See also, Light v.Ohio Univ. (1986), 28 Ohio St.3d 66, 68; Holdshoe v. Whinery (1968),14 Ohio St.2d 134, 137. In order to recover damages where a hazard on business premises has caused injury, a plaintiff must show:
 {¶ 15} "1. That the defendant through its officers or employees was responsible for the hazard complained of; or
 {¶ 16} 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
 {¶ 17} 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." Johnson v.Wagner Provision Co. (1943), 141 Ohio St. 584, 589.
 {¶ 18} Powers claims, in essence, that because a policy existed that required an employee to accompany the cart at all times, the Salvation Army was responsible for the cart's location, no matter if it was placed by either an employee or a customer.
 {¶ 19} Powers was a business invitee. See Scheibel v. Lipten (1951),156 Ohio St. 308, paragraph one of the syllabus. Although the Salvation Army had a duty to exercise ordinary care for her safety, it was not an insurer of her safety. A business's duty is to maintain the premises in a reasonably safe condition and to warn plaintiff about any hidden dangers of which it had or should have had knowledge. See Johnson v. WagnerProvision Co.; Englehardt v. Philipps (1939), 136 Ohio St. 73, 78
(liability stems from the owner's superior knowledge of existing dangers to persons going upon the property).
 {¶ 20} In this case, there is no evidence that the flatbed cart itself was an inherently dangerous object. Employees and customers had used the cart before without incident or injury. The hazard occurred here when someone placed the cart in front of the exit. To establish actionable negligence, Powers must show either that the Salvation Army or its employee created the hazard or had sufficient notice that a third party created the hazard. Viewed most favorably for Powers, the evidence showed that, even though the day manager's policy required an employee to accompany the cart, customers sometimes still used the cart alone. No one identified the man next to the cart. There was no direct evidence presented that the man was a Salvation Army employee or a customer.
 {¶ 21} Powers argues that because of the manager's policy she is entitled to an inference that an employee placed the cart in front of the door. This inference is insupportable, however, as it is based upon impermissible speculation rather than evidence. We must first speculate that, simply because it existed, Barlew's unofficial personal policy was always followed; we must then speculate that the man near the cart was an employee following Barlew's rule; finally, we must speculate that this man moved the cart. What the evidence actually shows is that Powers saw an unidentified man near the cart before she entered the store and when she left the store. Nothing links this man to the store as an employee or a cart mover. The facts presented are simply too speculative and remote to support Powers' inferences that a Salvation Army employee created the hazard. See Hurt v. Charles J. Rogers Transp. Co., supra.
 {¶ 22} In the alternative, Powers also failed to establish that the Salvation Army had sufficient notice of the hazard if the hazard was created by a third party. Powers argues that because it provides carts for customers' use, a business should be liable for and responsible at all times for injuries to an invitee caused by a cart, no matter who created the hazard. Applying this rationale would create a strict liability standard for any injury occurring on business premises from equipment such as customer shopping or flatbed carts.
 {¶ 23} Here, the cart was in front of the door for five minutes or less — insufficient time to give adequate notice to the store that any hazard existed. Nothing was presented to demonstrate that the employees had either actual or constructive notice of the hazard. Therefore, the trial court did not err in granting a directed verdict since, as a matter of law, Powers could not establish that the Salvation Army breached its duty of ordinary care.
 {¶ 24} Accordingly, appellants' sole assignment of error is not well-taken.
 {¶ 25} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants. Pursuant to App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J., Singer, Judges. Concur.
[1] Sally's husband, Alan Powers, a plaintiff in the suit, is also an appellant.