OPINION
{¶ 1} Appellant, Ohio Department of Aging, Long-Term Care Ombudsman Program, appeals from the August 29, 2006 judgment entry of the Trumbull County *Page 2 
Court of Common Pleas, Probate Division, denying the motion to terminate guardianship and assessing costs in the amount of $ 11,113.85.[1]
 {¶ 2} On June 13, 2002, Sharon Kilpatrick ("Kilpatrick"), with Senior Rights and Advocacy, Inc., filed an "Application for Appointment of Guardian of Alleged Incompetent," alleging that appellee, eighty-two-year-old Florence Tracey Carnivale ("Carnivale"), was incompetent by reason of a mental disability. Following a hearing, on June 19, 2002, the probate court appointed Kilpatrick as guardian of the person and estate. The probate court later notified Kilpatrick that an inventory was past due and that she had until October 10, 2002 to file the inventory.
 {¶ 3} On October 25, 2002, Carnivale sent a letter to Judge Thomas Swift, Trumbull County Probate Court Judge, in which she requested the termination of guardianship over her person and estate. In her letter, Carnivale indicated that she felt she was once again healthy and could make appropriate decisions for herself. Carnivale did not want to remain in a nursing home, but rather wanted to go back to her own residence.
 {¶ 4} On November 13, 2002, the probate court filed a citation for Kilpatrick to appear on December 28, 2002, to show cause why she should not be removed for failure to file the delinquent guardian's inventory. On January 24, 2003, Kilpatrick filed a motion for status conference. The probate court set a status conference for March 12, 2003. On April 14, 2003, Kilpatrick filed a motion to move to place Carnivale at home with hospice, which was granted by the trial court. On April 22, 2003, Kilpatrick filed the guardian's inventory. *Page 3 
 {¶ 5} Kilpatrick later filed a motion to withdraw as Carnivale's guardian, which was granted by the probate court on May 30, 2003. The probate court appointed two individuals with Senior Rights and Advocacy, Inc. Dottie DeLeo ("DeLeo") was to serve as successor guardian of the person, and Susan Pico ("Pico") was to serve as successor guardian of the estate. Pico filed the guardian's inventory on July 8, 2003. On September 4, 2003, the probate court notified DeLeo that her guardian's report was past due and that she had until September 19, 2003 to file it. On October 9, 2003, the probate court cited DeLeo to show cause why she should not be removed for failure to file the delinquent report. DeLeo finally filed the report on February 13, 2004. On June 2, 2004, the probate court notified Pico that the guardian's account was past due and that she had until June 17, 2004 to comply. Two days later, the probate court notified DeLeo that the guardian's report was past due and the she had until June 16, 2004 to file it.
 {¶ 6} DeLeo later filed a letter indicating her desire to withdraw as guardian of the person. On August 2, 2004, the probate court accepted DeLeo's resignation and appointed Wendy Walker-Bowers ("Walker-Bowers"), also with Senior Rights and Advocacy, Inc., as successor guardian of the person. On August 16, 2004, DeLeo filed a guardian's report. Pico filed a guardian's account on August 25, 2004. On September 10, 2004, the probate court notified Walker-Bowers that the statement of expert evaluation was past due and that she had until September 27, 2004 to file it.
 {¶ 7} On March 3, 2005, the probate court removed Pico on its own motion as successor guardian of the estate, and appointed appellee Guardianship and Protective Services, Inc. to take her place. On March 29, 2005, the probate court removed *Page 4 
Walker-Bowers on its own motion as successor guardian of the person, and appointed Katrina Stanko ("Stanko") to take her place.
 {¶ 8} On April 7, 2005, Pico filed the guardian's account. On May 6, 2005, Stanko filed a motion to relocate Carnivale from her residence to Imperial Skilled Care Center, which was granted by the probate court that same day. On July 22, 2005, Joshua Garris, with appellee Guardianship and Protective Services, Inc., filed the guardian's inventory. On August 4, 2005, Carnivale sent a letter to the probate court requesting a hearing to terminate guardianship. On January 26, 2006, Stanko filed the guardian's report.
 {¶ 9} On April 3, 2006, Carnivale signed a motion to terminate guardianship and requested to be represented by counsel, which was filed by Ombudsman John Saulitas ("Saulitas"), per Carnivale's request. Pursuant to its April 6, 2006 judgment entries, the probate court appointed Randil J. Rudloff, Esq., as Carnivale's attorney, as well as Ehab Sargious, M.D., to evaluate her competency.
 {¶ 10} On April 21, 2006, the probate court commanded Saulitas to appear on May 2, 2006, and to produce any records concerning Carnivale that supported either termination of the guardianship and/or supported relocation from Imperial Skilled Care Center to her residence. On April 28, 2006, counsel for appellant filed a motion to quash the subpoena issued to Saulitas, which was denied by the probate court on May 1, 2006. On May 11, 2006, the probate court sent Saulitas a letter stating that he should convey information to the guardian relating to specific home-based care and support programs that Carnivale qualified to receive if she returned to her home. *Page 5 
 {¶ 11} A hearing was held on the motion to terminate guardianship on August 11, 2006. Apparently, Saulitas testified at that hearing regarding his efforts as an Ombudsman to ensure that Carnivale's rights as a resident of a long-term care facility were validated. In its August 18, 2006 judgment entry, the probate court denied the motion to terminate guardianship and ordered that counsel for Carnivale be discharged.
 {¶ 12} Pursuant to its August 29, 2006 judgment entry, the probate court indicated that the motion to terminate guardianship was denied, and ordered that $ 11,113.85, the taxed costs from the hearing, be paid by appellant, "c/o John Saulitis, District XI Area Agency on Aging." It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:[2]
 {¶ 13} "The Probate Court Erred In Assessing Taxed Costs Against [appellant]."
 {¶ 14} In its sole assignment of error, appellant argues that the probate court erred in assessing costs against it. Appellant stresses that the probate court never attained personal jurisdiction over Saulitas because neither he nor appellant were ever made a party to the underlying guardianship matter.
 {¶ 15} Generally, we review a probate court's decision under an abuse of discretion standard. In re Estate of Shelton, 154 Ohio App.3d 188,2003-Ohio-4593, at ¶ 8, citing In re Estate of Platt,148 Ohio App.3d 132, 2002-Ohio-3382, at ¶ 13. However, the issue in the instant case presents a question of law, i.e., whether the probate court was legally able to assign costs to a non-party. Therefore, we review the probate court's decision de novo. See In re Estate of Robertson,159 Ohio App.3d 297, 2004-Ohio-6509, at ¶ 24, citing Cleveland Elec. Illuminating Co. v.PUC (1996), *Page 6 76 Ohio St.3d 521, 523 ("[w]hether or not the probate court had the authority to impose a monetary sanction * * * is a legal question that is reviewed de novo on appeal.")
 {¶ 16} The Supreme Court of Ohio in Maryhew v. Yova (1984),11 Ohio St.3d 154, 156, stated: "[i]t is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant. This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court." In the absence of personal jurisdiction over a defendant, a judgment is void ab initio. See Brooks v. Brooks (Sept. 11, 1992), 11th Dist. No. 91-P-2320, 1992 Ohio App. LEXIS 4714, at 10.
 {¶ 17} In the case sub judice, the record establishes that neither service of process by certified or express mail nor personal service was ever perfected on appellant and/or Saulitas. In addition, Saulitas never voluntarily submitted to the jurisdiction of the probate court. Apparently, his only participation with the guardian termination hearing included his testimony after being served a subpoena, which cannot be deemed "voluntary." See Maryhew, supra, at 157. Further, Saulitas did not commit any acts which would involuntarily submit him to the jurisdiction of the probate court. Saulitas' pre-hearing assistance on behalf of Carnivale does not make him a party to her case, as it was completely within the scope of his role as an Ombudsman for appellant. He clearly assisted Carnivale, a long-term care resident who had expressed an interest in returning to her home, which was directly opposed by her guardian. *Page 7 
 {¶ 18} R.C. 2101.32 limits the probate court to assign costs only between actual "parties" to the case. Because neither appellant nor Saulitas were "parties," the probate court did not have personal jurisdiction to assess costs against them. Thus, the probate court's August 29, 2006 judgment entry assessing taxed costs in the amount of $ 11,113.85 against appellant and/or Saulitas is void.
 {¶ 19} For the foregoing reasons, appellant's sole assignment of error is well-taken. The judgment of the Trumbull County Court of Common Pleas, Probate Division, is vacated.
WILLIAM M. O'NEILL, J., concurs, DIANE V. GRENDELL, J., dissents.
[1] In this appeal, appellant is only challenging the assessment of costs, not the denial of the motion to terminate guardianship.
[2] We note that neither Carnivale nor appellee Guardianship and Protective Services, Inc. filed appellate briefs. *Page 1