JOURNAL ENTRY AND OPINION
{¶ 1} On November 5, 2005, plaintiff-appellant North Coast Engines, Inc. ("North Coast") filed a complaint against defendants-appellees Richard Kuhn ("Kuhn") for breach of fiduciary duty, against Hercules Engine Company ("Hercules") for failure to pay for Perkins engine parts and for tortious interference, and lastly against Power Great Lakes, Inc. ("PGL") for failure to pay for Perkins engine parts as well.
 {¶ 2} The facts giving rise to the instant case center around an oral agreement entered into by North Coast, located in Bedford Heights, Ohio, and PGL, located in Chicago, Illinois. PGL is the sole distributor of Perkins engine parts in the United States. Perkins is headquartered in England. *Page 3 
 {¶ 3} In 1997, PGL and Crane Shovel Sales Corporation (later merged with North Coast) agreed that Crane Shovel Sales Corporation would act as the master dealer of Perkins engine parts in Ohio, thus succeeding Williams Detroit Diesel-Allison ("Williams") as master dealer. Richard Leppla ("Leppla"), owner of Crane Shovel Sales Corporation and North Coast, hired John Such ("Such") to act as President of North Coast.
 {¶ 4} Such left North Coast in 2000 and Kuhn replaced him. Leppla hired Kuhn to act as president because Kuhn possessed a superior knowledge of Perkins engines as a result of his prior employment with Williams. Additionally, Leppla hired Kuhn to act as president because Kuhn had already worked for Leppla for five years and had proven to be an excellent employee.
 {¶ 5} North Coast hired Kuhn as an at-will employee with a salary of $50,000 annually. North Coast and Kuhn did not enter into a written contract or into any noncompetition agreement.
 {¶ 6} Hercules, located in Massillon, Ohio, was in the business of selling re-manufactured Perkins engines and purchased its parts from North Coast. Hercules contacted PGL on more than one occasion and expressed its interest in acting as master dealer of Perkins engine parts in Ohio. PGL declined and expressed its desire that North Coast continue to act as master dealer.
 {¶ 7} During the summer of 2004, Kuhn met with Jack Dienes ("Dienes") and Bruce Weick ("Weick"), president and vice president respectively, and co-owners of *Page 4 
Hercules, to discuss employment opportunities with their organization. Hercules also contacted PGL and notified them of their interest in Kuhn. PGL expressed its desire that Kuhn continue his employment with North Coast and that North Coast continue to act as master dealer in Ohio.
 {¶ 8} In October 2004, Dienes and Weick contacted Leppla, owner of North Coast, to express their interest in purchasing North Coast. Leppla initially declined negotiations, then had a change of mind. Two weeks later, Leppla had his attorneys draft a confidentiality agreement dated October 26, 2004, and sent it to Hercules. Hercules became interested in purchasing North Coast when it heard that Leppla sought to sell the business to Such for $900,000. Hercules was not confident, however, that Leppla was going to sell the company and did not want to expend legal fees to review the confidentiality agreement. Hercules did not follow up with Leppla regarding the sale of North Coast.
 {¶ 9} In November and December 2004, Dienes and Weick continued discussions with Kuhn regarding employment opportunities. On January 10, 2005, Hercules presented Kuhn with a three-year employment contract. The employment contract included a $50,000 salary, benefits, and a noncompetition provision. Kuhn gave North Coast notice of his resignation on or around January 17, 2005, providing that his last day at North Coast would be January 28, 2005.
 {¶ 10} PGL gave the master dealership to Hercules. Hercules sent PGL a thank-you note for the master dealership on or about January 26 or 27, 2005. North *Page 5 
Coast sold its inventory back to PGL. In lieu of actual shipment to PGL, Hercules took possession of the inventory. North Coast sold its remaining assets to Hercules for $10,000.
 {¶ 11} Although Kuhn's last day was officially January 28, 2005, Kuhn spent the weekend continuing to work for North Coast, helping to record its inventory and load the inventory onto Hercules' trucks. Kuhn commenced employment at Hercules on January 31, 2005.
 {¶ 12} North Coast settled its claims against PGL and on November 20, 2006, the case proceeded to jury trial against Kuhn and Hercules. At the close of North Coast's case, the defense made an oral motion for directed verdict, granted by the trial court. On November 30, 2006, North Coast appealed and asserted two assignments of error for our review.
ASSIGNMENT OF ERROR NUMBER ONE
 "The lower court erred in entering a directed verdict in favor of defendant Richard Kuhn."
 {¶ 13} North Coast argues that the trial court erred in granting a directed verdict in favor of Kuhn. We disagree.
 {¶ 14} Civ.R. 50(A)(4) reads, in part, as follows:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse *Page 6 
to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 15} A motion for a directed verdict presents questions of law, not of fact, even though it is necessary to review and consider evidence.O'Day v. Webb (1972), 29 Ohio St.2d 215. Thus, we review motions for directed verdict upon a de novo standard of review. Cleveland Elec.Ilium. Co. v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521.
 {¶ 16} In its complaint, North Coast claimed that Kuhn breached his fiduciary duty by assisting Hercules in setting up a business to compete with North Coast. "To maintain a claim for breach of a fiduciary duty, the plaintiff must prove (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." Harwood v. Pappas Assoc, Cuyahoga App. No. 84761, 2005-Ohio-2442.
 {¶ 17} Even assuming, arguendo, the existence of a fiduciary duty owed by Kuhn to North Coast, the record does not reflect that Kuhn failed to observe his duty. Kuhn's position as president of North Coast did not involve a contract or a noncompetition agreement. Kuhn worked for North Coast as an at-will employee and was free to leave North Coast at anytime to work for Hercules.
 {¶ 18} Furthermore, Kuhn earned a $50,000 annual salary at North Coast plus benefits. Kuhn earned the same salary when he accepted the position with Hercules, but with additional health benefits and vacation. Hercules, unlike North *Page 7 
Coast, entered into a three-year written employment contract with Kuhn that included a noncompetition provision. The record does not reflect that Kuhn sustained any financial gain, any kickback, or any promotion for joining Hercules.
 {¶ 19} The record reflects that Kuhn did not breach his fiduciary duty to North Coast. Leppla was aware that when Kuhn left Williams and joined North Coast, the Perkins master dealership followed. Kuhn as an at-will employee could leave North Coast at any time.
 {¶ 20} The record does not reflect that Kuhn intentionally changed employment in order to divest North Coast of the master dealership.
 {¶ 21} After construing the evidence most strongly in favor of North Coast, we find that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to North Coast. Therefore, North Coast's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO
 "The lower court erred in entering a directed verdict in favor of defendant Hercules Engine Co."
 {¶ 22} North Coast argues that the trial court erred in granting a directed verdict in favor of Hercules. As already noted, we review motions for directed verdict upon a de novo standard of review.Cleveland Elec. Illum. Co., supra.
 {¶ 23} North Coast alleged in its complaint that Hercules committed tortious interference. Specifically, North Coast argued the following: that Hercules induced *Page 8 
Kuhn to breach his fiduciary duty, and that Hercules interfered with the master dealership relationship between North Coast and PGL. As we already found that Kuhn did not fail to observe a fiduciary duty, North Coast's first argument for tortious interference must fail.
 {¶ 24} Regarding North Coast's second argument for tortious interference, namely, that Hercules interfered with its master dealership relationship with PGL, we find the same. The elements of tortious interference with a contract are: first, the existence of a contract; second, the wrongdoer's knowledge of the contract; third, the wrongdoer's intentional procurement of the contract's breach; fourth, lack of justification; and fifth, resulting damages. Fred Siegel Co. v.Arter Hadden, 85 Ohio St.3d 171, 1999-Ohio-260.
 {¶ 25} Consideration should also be given to the following factors: the nature of the actor's conduct; the actor's motive; the interests of the other side which the actor's conduct interferes; the interests sought to be advanced by the actor; the social interests in protecting the freedom of action of the actor and the contractual interests of the other; the proximity or remoteness of the actor's conduct to the interference; and lastly, the relations between the parties. Id.
 {¶ 26} In applying the law to the facts of the case, we find that PGL and North Coast conducted business with each other pursuant to an oral contract awarding North Coast the master dealership. Hercules knew of the contract and attempted to acquire the master dealership through discussions with PGL and North Coast *Page 9 
throughout 2004. Leppla, as owner of North Coast, went as far as having his attorney draw up a confidentiality agreement regarding the sale of North Coast to Hercules. Kuhn only decided to leave North Coast after he became aware of Leppla's intention to sell the business.
 {¶ 27} Furthermore, the record does not demonstrate that Hercules intentionally procured breach of the oral contract between PGL and North Coast. The evidence does not show that Hercules hired Kuhn intending to procure breach of the oral contract between PGL and North Coast. Hercules hired Kuhn because of his exceptional knowledge of Perkins engines and parts.
 {¶ 28} After construing the evidence most strongly in favor of North Coast, we find that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to North Coast. Therefore, North Coast's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and MELODY J. STEWART, J., CONCUR. *Page 1