Day, J.
 

 This is an original action in mandamus, instituted in this court by relator, as a taxpayer, resident and elector, for a writ of mandamus to compel respondents, as members of the council of the village of Milan, Ohio, to make provision for the submission of an ordinance to a referendum vote of the electors of the village.
 

 The council of the village of Milan, Ohio, passed an ordinance, which the mayor approved, directing the board of public affairs of the village to enter into a contract, proposed by the city of Norwalk, Ohio, for the purchase of electric current from that city for a period not to exceed ten years.
 

 A referendum petition was circulated against this ordinance and more than a sufficient number of signatures was obtained thereto.
 

 The ordinance against which the referendum petition is directed was passed on June 14, 1937. Within thirty days following its passage, namely, on July 13, 1937, the referendum petition, in four parts, was filed by relator with the mayor at his residence. The mayor transmitted this petition to the village council, and the
 
 *501
 
 latter, at a regular meeting held on July 26, 1937, passed a motion to ignore the petition.
 

 The questions here presented are:
 

 1. "Whether a referendum on a municipal ordinance, authorizing a contract for the purchase of a public utility product or service, comes within the purview of Section 5, Article XVIII of the Ohio Constitution, or under that of Section 4227-2
 
 et seq.,
 
 General Code.
 

 2. Whether the filing of a referendum petition with the mayor, at his residence, is a sufficient filing under the law.
 

 Respondents, in justification of their refusal to malee provision for referendum submission of the ordinance in question, contend that the referendum petition is ineffective as such for the reason that it was not circulated and filed in accordance with the requirements contained in Sections 4227-2
 
 et seq.,
 
 General Code; that a duly verified copy of the ordinance was not filed with the village clerk before circulation of the petition, as provided in Section 4227-6, General Code; that the referendum petition was not filed with the village clerk, as provided in Section 4227-2, General Code; and that the petition, having been filed with the mayor rather than with the clerk, was' not filed with the proper authority.
 

 Relator admits non-compliance with the statutory provisions above named, but contends that the ordinance here sought to be referred, being one for the purchase of a public utility product, referendum thereon is not governed by statute but comes under the exclusive purview of Section 5, Article XVIII of the Ohio Constitution.
 

 Respondents take issue with this position and insist that the only ordinances which are subject to referendum under the provisions of Section 5, Article XVIII of the Ohio Constitution, are those which authorize a municipality ‘Go acquire, construct, own, lease or oper
 
 *502
 
 ate a public utility,” and that ordinances authorizing a contract for the purchase of a public utility product or service are not included therein.
 

 The dispute revolves around the meaning to be attributed to the word “therefor” found in Section 5. Respondents argue that it refers to the phrase “public utility” immediately preceding, and relator, on the other hand, argues that it refers to the phrase “product or service” in Section 4.
 

 Section 4, Article XVIII of the Ohio Constitution, provides:
 

 “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company^ or person supplying to the municipality or its inhabitants the service or product of any such utility. ’ ’
 

 Section 5, Article XVIII of the Ohio Constitution, provides:
 

 “Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company
 
 therefor,
 
 shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of
 
 *503
 
 this Article as to the submission of the question of choosing a charter commission.” (Italics' ours.)
 

 Superimposing the first sentence of Section 4 over the forepart of the first sentence of Section 5, the language will be observed to be, in most part, identical:
 

 Any Any struct | own struct | own public | utility public | utility with I others municipality municipality lease | and lease | or * * | and I or may | acquire | con-proceeding to | acquire | con-op erate * * * any | operate a j | may | contract | | to j contract j for any such product with j any person or company | therefor, or service.
 

 The permissive “may” in Section 4, is' changed to the operative “proceeding to” in Section 5; the words “any person or company” in Section 5, are substituted for the single word “others”, in Section 4; and the single word “therefor” is substituted for and is made to refer to the words “for any such product or service.” There is no doubt in our minds that these terms are and were intended to be used interchangeably and as referring to each other. The language, although different, is corresponding and expresses the same sense.
 

 Respondents’ interpretation of the word “therefor” cannot possibly be the sense in which it was' used, for, under such interpretation, that word would repeat the very thought and language already expressed. The provision, under respondents’ interpretation, would have to read: “Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company for the acquisition, construction, owning, leasing or operation of a public utility
 
 * * * .”
 
 Were this the intention of the
 
 *504
 
 Constitutional Convention, the thought would have been better expressed without the addition of the words ‘
 
 ‘
 
 or to contract with any person or company therefor. ’ ’ The addition of this language must have been made, not for the purpose of repeating a provision already made, but for the purpose of adding something not yet expressed, namely, “or to contract with others for any such product or service.” Drafters of constitutional provisions generally seek precision and conciseness in expression, practice strict economy in the use of language, seek to give every word a purposeful and meaningful place in the Constitution, and exert effort to avoid repetition of thought and language. We are satisfied that the word “therefor” was not used in the sense contended for by respondents.
 

 Section 4 confers power; it authorizes municipal ownership and operation of public utilities and the purchase of public utility products or service from others. 'Section 5 prescribes the method for the exercise of this power, namely, by ordinance. The one section is permissive, the other is procedural. Both relate to the same subject-matter. They are
 
 in pari materia
 
 and must be read and construed together. The requirement of Section 5 is- that all the power conferred upon municipalities in Section 4, including that of contracting with others for utility products or service, shall be exercised by ordinance; that such ordinance shall not go into effect for thirty days following its passage; that if within such period of time “a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of this
 
 *505
 
 Article as to the submission of the question of choosing a charter commission.”
 

 The ordinance in question, being one for the purchase of electric current, a public utility product, comes squarely under the purview of Section 5, Article XVIII of the Ohio Constitution. This section is self-executing
 
 (State, ex rel. City of Toledo,
 
 v.
 
 Weiler,
 
 101 Ohio St., 123, 128 N. E., 88), and requires no assistance of statute to give it effect and operation. The reference procedure therein prescribed must be followed to the exclusion of that prescribed by the provisions of Section 4227-2
 
 et seq.,
 
 General Code, since the superior authority of constitutional provision must prevail over statute. We hold that relator’s failure to comply with the requirements of the provisions of Section 4227-2
 
 et seq.,
 
 General Code, does not in any manner vitiate the referendum petition.
 

 “A
 
 contract entered into between a public utility and a municipality of this state, whereby the public utility agrees to supply its product or service to the municipality or its inhabitants for a period of ten years, at a rate, price, charge, toll or rental specified in such contract, is expressly authorized by Section 4, Article XVIII of the Constitution of Ohio, and is valid and binding upon the parties thereto,
 
 unless disapproved by a majority of the electors voting thereon, at a referendum election held under the provisions of Section 5, Article XVIII of the Constitution of this state.”
 
 (Italics ours.)
 
 Ohio River Power Co.
 
 v.
 
 City of Steubenville,
 
 99 Ohio St., 421, 124 N. E., 246, paragraph 4 of the syllabus.
 

 £ t # * # authority of a municipality to enter into a contract with a public utility for its product and service is now expressly conferred by the Constitution and is valid and binding upon the parties thereto
 
 unless disapproved by a majority of the electors vot
 
 
 *506
 

 ing thereon at a referendum election held pursuant to the provisions of Section 5, Article XVIII of the Ohio Constitution.
 
 No legislative act can in any wise modify or restrict the power conferred by constitutional provision, and therefore any provision of the statute inconsistent with the constitutional provision conferring such power must fall.” (Italics ours.)
 
 Link
 
 v.
 
 Public Utilities
 
 Commission, 102 Ohio St., 336, at 338, 131 N. E., 796.
 

 We now come to the question whether there was a legal filing. Respondents contend that leaving the referendum petition with the mayor at his residence did not constitute a valid filing; that to be valid as such, it must be filed with the “executive authority at his office.”
 

 The depositions taken and filed in this case disclose that the mayor and village clerk are both assigned office space in the council chamber of the village, equipped with the official seals of office; that all council meetings are recorded as taking place “in the mayor’s office and council room in the town hall.”
 

 In the deposition of the mayor, taken in this case, the following questions were put and answers given on cross-examination:
 

 “Q. How many times during the day are you here [referring to the mayor’s office] and for what regular periods? *
 
 *
 
 * A. Not any regular periods.”
 

 Again,—
 

 “Q. Well, your duties as mayor, you conduct them from your house as well as in here, do you not? A. The trials or anything like that comes here.”
 

 “Q. But any of your other duties as mayor, you do take care of at your house? A. Wherever I am.”
 

 And again,—
 

 “Q, Now getting back to the matter, Mr. Moore, of people who have business with the mayor and want
 
 *507
 
 to see you in your capacity of mayor, often see you at your house, don’t they? A. Yes sir.”
 

 Althoug’h the mayor is assigned an office for the transaction of official business, be is not usually there available; he maintains no regular office hours and transacts official business at home, at the office, or wherever he may happen to be. As counsel for relator point out, such is the usual practice in small villages. Under such circumstances, to require the referendum petition to be filed with the mayor at his office only, a place where he is usually not to be found, would be as absurd as it would be unfair. Such a requirement would oblige the petitioning electors to wait for filing until such time as the mayor would chance to be in his office, thereby placing an obstacle in the path of the electors, which might occasion such delay as to place them beyond the time limit fixed by law for filing, and thereby, without any fault of their own, forfeit the right to referendum.
 

 Where the mayor of a village, although afforded an office, does not maintain regular office hours, and is not readily available at his office, and transacts official business at his residence as well as at his office, the filing of a referendum petition with him at his residence will be d'eemed to be valid and sufficient filing.
 

 Relator has shown a clear, legal right to a writ in mandamus, which is hereby allowed as prayed for.
 

 Writ allowed.
 

 Weygandt, C. J., Matthias, Williams and Gorman, JJ., concur.