[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 288.]

TOLEDO EDISON COMPANY, APPELLANT, *v*. CITY OF BRYAN ET AL., APPELLEES.

[Cite as *Toledo Edison Co. v. Bryan*, 2000-Ohio-169.]

*Municipal corporations—Electric service—Sections 4 and 6 of Article XVIII of the Ohio Constitution preclude a municipality from purchasing electricity solely for the purpose of reselling it to an entity not within the municipality's geographic limits.*

(No. 99-1280—Submitted June 7, 2000—Decided November 15, 2000.)

APPEAL from the Court of Appeals for Williams County, No. WM-98-017.

_____

{¶ 1} This appeal addresses whether a municipality has the right to purchase electricity solely for the purpose of reselling the electricity to an entity outside the municipality's geographic boundaries. Generally public utilities that produce electricity have exclusive authority to provide electrical service to persons outside municipalities. However, under Sections 4 and 6, Article XVIII of the Ohio Constitution, municipalities have home rule authority to purchase or produce electricity for their inhabitants, as well as the right to sell limited amounts of surplus electricity to entities outside the geographic boundaries of the municipality.

{¶ 2} Because the trial court dismissed the appellant, Toledo Edison's, complaint for failure to state a claim, the facts stated here are as alleged in the complaint. Toledo Edison Company is a public utility that generates, transmits, distributes, and sells electric power to customers in northwest Ohio, including Williams County, pursuant to the Certified Territories Act ("CTA"), R.C. 4933.81 to 4933.90. Appellees Bryan, Pioneer, Montpelier, and Edgerton ("municipalities") are all municipal corporations located in Williams County, Ohio, that own and operate their own utilities that produce electricity for their inhabitants. Appellee, Ohio Municipal Electric Generation Agency Joint Venture 4, is a joint venture of

the four municipalities to facilitate the purchase, transmission, and resale of electricity. Chase Brass & Copper Company ("Chase Brass") is a corporation engaged in smelting and is located in Williams County, but outside of all the municipalities' geographic limits. American Municipal Power-Ohio ("AMP-Ohio") is a wholesale electric supplier and trade association that assists in supplying electricity to its member municipalities.

{¶ 3} The municipalities, through AMP-Ohio, constructed an electric power transmission line in Williams County that runs from one of Bryan's municipal electrical substations directly to Chase Brass. In July 1995, all the municipalities adopted ordinances authorizing them to sell electricity to Chase Brass via the Chase Brass transmission line. On October 17, 1995, Chase Brass terminated its thirty-three-year history of purchasing electricity from Toledo Edison and began purchasing electricity from the municipalities. The municipalities had to purchase electricity in order to fulfill their obligation to provide Chase Brass with electricity. Toledo Edison believed that the municipalities' purchase and sale of electricity to Chase Brass was not within the municipalities' authority. Consequently, counsel for Toledo Edison wrote letters to the law director or village solicitor of each of the municipalities, demanding that they seek injunctions to restrain their municipalities from expending public money for the purpose of promoting the electrical service agreements or taking any other action to promote the sale of electricity to Chase Brass. These officers failed to take any legal action against the municipalities.

{¶ 4} On February 23, 1996, Toledo Edison filed a complaint for injunctive and declaratory relief in the Williams County Court of Common Pleas, seeking a declaration that the municipalities' sale of electricity to Chase Brass was illegal and unconstitutional. Specifically, Toledo Edison alleged that the municipalities were purchasing electricity to sell to Chase Brass in violation of Section 4, Article XVIII of the Ohio Constitution. Toledo Edison asserted that Section 4 authorizes a municipality to purchase electricity solely for the use by the municipality or its

2

inhabitants. Toledo Edison asserted that the municipalities purchased electricity from AMP-Ohio solely to resell to Chase Brass, a noninhabitant, in violation of Section 4.

{¶ 5} Toledo Edison also alleged that the municipalities' sale of electricity to Chase Brass violated Section 6, Article XVIII of the Ohio Constitution. Toledo Edison asserted that Section 6 does not authorize a municipality to purchase electricity for the purpose of selling it to an entity outside the municipality. Toledo Edison alleged that the electricity being sold by the municipalities to Chase Brass was not surplus electricity generated by any of the municipalities' utilities but rather electricity purchased by the municipalities specifically for resale to Chase Brass in violation of Section 6.

{¶ 6} The municipalities filed a motion to dismiss that alleged that Toledo Edison lacked standing to challenge the municipalities' sale of electricity to Chase Brass. On August 18, 1998, the trial court issued a judgment entry granting the motion to dismiss for lack of standing. The court also decided that Toledo Edison's claims were without merit even assuming that Toledo Edison had standing. Toledo Edison appealed.

{¶ 7} The Court of Appeals for Williams County affirmed in part and reversed in part the trial court's judgment. The appellate court reversed the trial court's holding that Toledo Edison lacked standing to file suit against the municipalities, finding that Toledo Edison had standing under R.C. 2721.03. However, the appellate court found that Section 6, Article XVIII of the Ohio Constitution provided municipalities the right to sell surplus electricity without regard to whether the municipality bought the electricity for the purpose of resale, as long as the amount sold outside the municipality did not exceed fifty percent of the total electricity consumed in the municipality. The appellate court remanded the cause to the trial court for further proceedings on Toledo Edison's claim that

the municipalities' sale of electricity to Chase Brass exceeded the fifty-percent limit imposed by Section 6, Article XVIII of the Ohio Constitution.

**{¶ 8}** This cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Fuller & Henry, Ltd., Craig J. Van Horsten* and *Mary Ann Whipple;* and *Michael R. Beiting,* for appellant.

*Kent L. North,* Bryan City Attorney; *Chester, Willcox & Saxbe, L.P.A.,* and *John W. Bentine*; *Duncan & Allen* and *John P. Coyle,* for appellees.

*Jones, Day, Reavis & Pogue* and *Paul T. Ruxin*, urging reversal for *amici curiae* Allegheny Power, Cincinnati Gas & Electric Company, Dayton Power & Light Company, Ohio Edison Company, and the Cleveland Electric Illuminating Company.

*Gary A. Jack*, urging reversal for *amicus curiae* Allegheny Power.

*James B. Gainer*, urging reversal for *amicus curiae* Cincinnati Gas & Electric Company.

*Arthur G. Meyer*, urging reversal for *amicus curiae* Dayton Power & Light Company.

*Chester, Willcox & Saxbe, L.L.P., J. Craig Wright* and *Jeffrey L. Small*, urging affirmance for *amicus curiae* AMP-Ohio.

*Zoll & Kranz, L.L.C.,* and *David W. Zoll*; *Vorys, Sater, Seymour & Pease, L.L.P., Sheldon A. Taft* and *Jason J. Kelroy,* urging affirmance for *amicus curiae* Chase Brass and Copper Company.

*McNees, Wallace & Nurick* and *Samuel C. Randazzo*, urging affirmance for *amicus curiae* Industrial Energy Users-Ohio.

*Lawrence J. Seltzer, Jr*., urging affirmance for *amicus curiae* Ohio Council of Retail Merchants.

*Vorys, Sater, Seymour & Pease, L.L.P., Sheldon A. Taft* and *Jason J. Kelroy*, urging affirmance for *amicus curiae* Ohio Manufacturers' Association.

*John E. Gotherman*, urging affirmance for *amicus curiae* Ohio Municipal League.

*David C. Reinbolt*, urging affirmance for *amicus curiae* Ohio Partners for Affordable Energy.

_____

**LUNDBERG STRATTON, J.**

{¶ 9} We are asked to determine whether a municipality has constitutional authority to purchase electricity solely for direct resale to an entity that is not an inhabitant of the municipality and not within the municipality's limits. For the following reasons we find that the answer is no.

{¶ 10} Many of Ohio's inhabitants are provided electrical service by public utilities. The Ohio Public Utilities Commission has divided Ohio into territories pursuant to the Certified Territories Act ("CTA"). See R.C. 4933.82. Under the CTA, each electricity-producing public utility is assigned a territory under which it has the exclusive right to sell electricity to the inhabitants of that territory. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 668 N.E.2d 889, 890, fn. 1. However, a public utility's exclusive right to provide electricity within its territory is subject to an exception. The Ohio Constitution provides that municipalities may acquire or produce utility services or products for the municipality and its inhabitants and sell surplus product or service. Sections 4 and 6, Article XVIII of the Ohio Constitution. The question is whether a municipality can use this constitutional authority to purchase electricity solely for the purpose of reselling it to an entity outside the municipality's geographic boundaries.

{¶ 11} The Ohio Constitution addresses a municipality's authority to produce and acquire a public utility product or service in Section 4, Article XVIII:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or *is to be supplied to the municipality or its inhabitants*, and may contract with others for any such product or service."  (Emphasis added.)

{¶ 12} Section 4 authorizes a municipality to establish, maintain, and operate a power plant to produce electricity.  See *Orr Felt Co. v. Piqua* (1983), 2 Ohio St.3d 166, 170, 2 OBR 709, 713, 443 N.E.2d 521, 525.  It also authorizes a municipality to contract to purchase electricity.  See *Cleveland Elec. Illum. Co.*, 76 Ohio St.3d at 526, 668 N.E.2d at 893.  However, a municipality's authority to produce or purchase electricity is limited "primarily to the furnishing of services to their own inhabitants."  *State ex rel. Wilson v. Hance* (1959), 169 Ohio St. 457, 461, 8 O.O.2d 471, 473, 159 N.E.2d 741, 744.

{¶ 13} Section 6, Article XVIII of the Ohio Constitution provides the criteria pursuant to which a municipality may sell electricity:

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, *may* also *sell* and deliver to others any transportation service of such utility and the *surplus product* of any other utility in an amount not exceeding in either case fifty per cent of the total service or product supplied by such utility within the municipality * * *."  (Emphasis added.)

{¶ 14} Section 6 allows a municipality that owns or operates a utility for the purpose of generating its own electricity to sell surplus electricity.  Critical to our analysis of Section 6 is the meaning of the word "surplus."  Language used in the Constitution should be given its usual and ordinary meaning.  *Cleveland Tel. Co. v. Cleveland* (1918), 98 Ohio St. 358, 368, 121 N.E. 701, 704.  "Surplus" is defined as "the amount that remains when use or need is satisfied."  Webster's Third New International Dictionary (1993) 2301.  Thus, a municipality may sell electricity that

is in excess of what the municipality or its inhabitants use subject to any other limitations, which we do not address in this opinion.

{¶ 15} Where provisions of the Constitution address the same subject matter, they must be read *in pari materia* and harmonized if possible. *State ex rel. Mitchell v. Council of Village of Milan* (1938), 133 Ohio St. 499, 11 O.O. 187, 14 N.E.2d 772; *Isaac v. Intercoast Sales Corp.* (1937), 132 Ohio St. 289, 8 O.O. 49, 7 N.E.2d 216. Section 4 and Section 6 of Article XVIII of the Ohio Constitution define a municipality's rights pertaining to acquisition and disposition of public utility products and services. *Hance*, 169 Ohio St. at 461, 8 O.O.2d at 473, 159 N.E.2d at 744. Thus, Sections 4 and 6 should be construed *in pari materia*.

{¶ 16} Section 4 intends to limit a municipality's authority to produce or acquire electricity primarily for the purpose of serving it or its inhabitants' needs. *Hance*, 169 Ohio St. at 461, 8 O.O.2d at 473, 159 N.E.2d at 744. Section 6 intends to limit a municipality's ability to sell only that electricity that is in excess of what is needed by the municipality or its inhabitants. Read *in pari materia,* Sections 4 and 6 only allow a municipality to purchase electricity primarily for the purpose of supplying its residents and reselling only surplus electricity from that purchase to entities outside the municipality. This interpretation necessarily precludes a municipality from purchasing electricity solely for the purpose of reselling the entire amount of the purchased electricity to an entity outside the municipality's geographic limits.

{¶ 17} This holding comports with this court's determination that the framers "intended to * * * prevent * * * municipalities from entering into the general public-utility business outside their boundaries in competition with private enterprise." *Hance,* 169 Ohio St. at 461, 8 O.O.2d at 473, 159 N.E.2d at 744. Public utilities that provide electricity, such as Toledo Edison, are subject to substantial regulatory controls by the Public Utilities Commission of Ohio, including regulation of rates. See, *e.g.*, R.C. 4933.13 *et seq*.; R.C. Chapter 4909.

Each electric utility is given a territory by the Public Utilities Commission within which it has the exclusive right to sell its electricity. See R.C. 4933.81 *et seq.*; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d at 521, 668 N.E.2d at 890, fn. 1. In contrast a municipality's production or purchase of electricity is not regulated by the PUCO. To allow municipalities the unfettered authority to purchase and then resell electricity to entities outside their boundaries could create unfair competition for the heavily regulated public utilities.

{¶ 18} Thus, we hold that Sections 4 and 6 of Article XVIII of the Ohio Constitution, read *in pari materia*, preclude a municipality from purchasing electricity solely for the purpose of reselling it to an entity that is not within the municipality's geographic limits. In other words, a municipality is prohibited from in effect engaging in the business of brokering electricity to entities outside the municipality in direct competition with public utilities. This prohibition includes a de facto brokering of electricity, *i.e.*, where a municipality purchases electricity solely to create an artificial surplus for the purpose of selling the electricity to an entity not within the municipality's geographic boundaries.

{¶ 19} Ultimately, determination of this issue requires fact-finding by the trial court as to whether the electricity purchased by the municipalities herein was solely for the purpose of resale to an entity outside the geographic boundaries of the municipalities. Thus, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings on Toledo Edison's claims.

*Judgment reversed*
*and cause remanded.*

F.E. SWEENEY, Acting C.J., GWIN, O'NEILL and YOUNG, JJ., concur.

PFEIFER, J., concurs in judgment only.

HADLEY, J., dissents.

W. SCOTT GWIN, J., of the Fifth Appellate District, sitting for MOYER, C.J.

RONALD E. HADLEY, J., of the Third Appellate District, sitting for DOUGLAS, J.

WILLIAM M. O'NEILL, J., of the Eleventh Appellate District, sitting for RESNICK, J.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for COOK, J.

_____

**HADLEY, J., dissenting.**

{¶ 20} I respectfully dissent.

{¶ 21} I agree with the majority's statement that "[t]he Ohio Constitution provides that municipalities may acquire or produce utility services or products for the municipality and its inhabitants and sell surplus product or service." I disagree with the majority when it states that a municipality is limited in this endeavor by any means other than the fifty-percent limitation set forth in Section 6, Article XVIII of the Constitution.

{¶ 22} Under the Home Rule Amendment, Article XVIII, adopted after being proposed by the Constitutional Convention of 1912, "the sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all matters of 'local self-government.' " *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 255, 140 N.E. 595, 598.

{¶ 23} In *Travelers Ins. Co. v. Wadsworth* (1924), 109 Ohio St. 440, 142 N.E. 900, at paragraph two of the syllabus, this court held that "in the absence of specific prohibition, the city acting in a proprietary capacity may exercise its powers as would an individual or private corporation."

{¶ 24} In *State ex rel. Indian Hill Acres, Inc. v. Kellogg* (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E.2d 319, the court held that a municipality has full power to determine the policy to be followed in regard to the sale and delivery of a surplus product of a municipally owned utility to others and that it may sell and

dispose of its surplus product in such quantities and in such manner as its council determines to be in the best interest of the municipality and its inhabitants.

{¶ 25} Specifically referring to electrical utilities, in *State ex rel. McCann v. Defiance* (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d 221, paragraph one of the syllabus, the court ruled, "The General Assembly has no power to * * * [limit] the * * * authority of a municipality * * * to sell and deliver to others the portion of the surplus product of such utility that it is authorized by Sections 4 and 6 of Article XVIII of the Constitution to sell and deliver to such others."

{¶ 26} The majority cities as its authority to limit the sale by municipal utilities the case of *State ex rel. Wilson v. Hance* (1959), 169 Ohio St. 457, 461, 8 O.O.2d 471, 473, 159 N.E.2d 741, 744. A close examination of that case reveals that the court found that the Constitution did in fact authorize municipalities to acquire public utilities and contract with others for their products and services, but pointed out that the disposition of surplus products or services of the utilities was limited by Section 6, Article XVIII, the fifty-percent limitation. The court merely found that under the circumstances of that case, since it had already been determined that the city of Piqua had exceeded its fifty-percent limitation, any further contract to sell surplus electricity outside the city would be invalid due to that fifty-percent limitation only. Thus neither the Constitution nor case law limits the action of the municipalities in this action except for the fifty-percent limitation.

{¶ 27} In conjunction with the constitutional power regarding utilities, the General Assembly has enacted R.C. 715.02, which provides that two or more municipal corporations may enter into agreements for the joint construction or management of a utility, "or for the joint exercise of any power conferred on municipal corporations by the constitution or laws of this state, in which each of such municipal corporations is interested."

{¶ 28} Thus a municipality has full and complete power to enter into whatever arrangement it deems necessary for the ownership, operation, and control

of public utilities by itself or in conjunction with other municipalities, subject to the fifty-percent limitation.

{¶ 29} The majority concludes without authority that since municipalities are not regulated by the Public Utility Commission, "[t]o allow municipalities the unfettered authority to purchase and then resell electricity to entities outside their boundaries could create unfair competition for the heavily regulated public utilities."

{¶ 30} Examining the limitation provision, I find that Section 6, Article XVIII does not provide an "unfettered authority":

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others *any transportation service of such utility and the surplus product of any other utility* in an amount *not exceeding* in either case *fifty per cent of the total service or product supplied by such utility within the municipality*, provided that such fifty per cent limitation shall not apply to the sale of water or sewage services."

{¶ 31} The debates and proceedings of the constitutional convention clearly indicate that the framers considered whether municipalities would be competitive with private corporations for utilities and concluded that the fifty-percent provision would be the only necessary limitation and that the implementation of that limitation should be left to the courts. The court of appeals made the correct assessment of this matter and remanded it to the trial court for determination regarding fifty-percent limitation. I believe that the decision of the court of appeals should be affirmed.

————————————