[Cite as *Dover Chem. Corp. v. Dover*, 2025-Ohio-20.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DOVER CHEMICAL CORPORATION | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| CITY OF DOVER, OHIO | : | Case Nos.  2024 AP 02 0008 |
| | : |                 2024 AP 04 0016 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Court of Common
                               Pleas, Case No. 2021 CV 02 0097


JUDGMENT:                      Affirmed/Reversed in Part and
                               Remanded


DATE OF JUDGMENT:              January 3, 2025


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

SCOTT L. BRAUM                            DOLORES GARCIA
TIMOTHY R. RUDD                           ROBIN WILSON
812-C East Franklin Street                HALDEN R. SCHWALLIE
Dayton, OH  45459                         1660 West 2nd Street, Suite 1100
                                          Cleveland, OH  44113-1448

*King, J.*

{¶ 1}  Defendant-Appellant, City of Dover, Ohio, appeals the April 5, 2024 judgment entry of the Court of Common Pleas of Tuscarawas County, Ohio, granting summary judgment to Plaintiff-Appellee, Dover Chemical Corporation.  We affirm in part and reverse in part the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  City owns an electric utility providing electric power to homes and businesses within its municipal jurisdiction (Dover Light & Power).  Starting in 1976, Dover Chemical started purchasing electricity from City even though it was located outside City's municipal jurisdiction.   City constructed an electrical line and installed distribution transformers beyond the metering point and provided maintenance services to this equipment located within the fence line of Dover Chemical's plant.  City owned the line and the equipment and charged Dover Chemical for the electricity used at the same rate as other industrial customers located within the municipal jurisdiction.  Dover Chemical had the option to purchase the line and equipment beyond the meter if it so desired; the selling price would be established at that time based on an appraised value of the line and equipment.

{¶ 3}  In 2003, City's Mayor informed Dover Chemical it was responsible for maintaining any electrical equipment located on its property beyond the primary metering point.  The Mayor admitted City violated its own rules (Electric Service Regulations of the City of Dover) by providing equipment to Dover Chemical and maintenance service was becoming a safety issue.  Dover Chemical did not object and any equipment from the

primary metering pole became the property of Dover Chemical on May 1, 2003.  But City alleged it continued to provide maintenance services to the equipment after 2003.

{¶ 4}   In 2019, Dover Chemical requested a rate reduction.  Instead, City Council discussed increasing the rate to add a surcharge for all the equipment, maintenance, and repairs City provided to Dover Chemical over the years without receiving additional compensation.

{¶ 5}   On September 10, 2020, the Times-Reporter newspaper published an article regarding City's consideration of adding a surcharge on electricity used by Dover Chemical in order to recoup the cost of what "Law Director Doug O'Meara says is illegal services the Dover Electric Field Division has been providing the company for 44 years." *See* Article attached to March 22, 2021 Amended Complaint as Appendix H.  The article referred to a letter written by the Law Director to City Council.

{¶ 6}   On February 10, 2021, Dover Chemical filed a complaint against City and Law Director Douglas O'Meara for declaratory judgment and other relief, listing ten claims. Pertinent to this appeal is Claim III, "Ohio Declaratory Judgment Act - O.R.C. § 2721.01 et seq. Non-Contractual Penalties."  Dover Chemical alleged City was threatening to impose by ordinance a penalty against it for "alleged unpaid services, equipment, manpower, or materials," and such a penalty was unenforceable absent a contractual agreement.  Also pertinent is Dover Chemical's Claim VII for unjust enrichment.  Dover Chemical claimed it was overcharged because City denied it "credit due to certain customers who own and maintain their own equipment."  Dover Chemical filed an amended complaint on March 22, 2021, to add a claim for preliminary and permanent injunction which was subsequently resolved.

{¶ 7} On March 12, 2021, City enacted Amended Emergency Ordinance 29-20, assessing Dover Chemical a surcharge to recoup the services Dover Chemical allegedly improperly received. The surcharge would remain in effect for at least two years and amounted to an additional $0.03125 per kWh over 100,000 kWh per month.

{¶ 8} On April 5, 2021, City filed a motion to dismiss all of Dover Chemical's claims and alleged it had immunity as to some of the claims. By judgment entry filed July 9, 2021, the trial court dismissed three of the ten claims and found immunity applied to the fraudulent misrepresentation claim. City filed an appeal; this court affirmed the trial court's decision, but found the law director was immune from the defamation claim. *See Dover Chemical Corporation v. Dover,* 2022-Ohio-2307 (5th Dist.).

{¶ 9} On September 15, 2022, City filed an answer and a counterclaim seeking a declaratory judgment that it could enact the ordinance (Count I), and made claims to recover the costs of services and equipment provided to Dover Chemical without compensation (unjust enrichment, breach of contract, conversion, civil theft, civil conspiracy, and abuse of process).

{¶ 10} On July 17, 2023, Dover Chemical filed a motion for an in-camera inspection, claiming City withheld production of the letter from Law Director O'Meara to City Council claiming attorney-client privilege, but O'Meara had provided the letter to the local newspaper. Dover Chemical argued any other document withheld on the basis of attorney-client privilege should be reviewed for trial court determination on whether they should be produced. By judgment entry filed August 29, 2023, the trial court granted the motion and ordered City to produce any withheld documents alleged to be privileged for its review. The trial court denied City's motion for reconsideration on October 18, 2023.

{¶ 11} On September 28, 2023, City filed a motion for a protective order to limit the re-deposition of O'Meara after the deposition was terminated due to a dispute that arose after a break.  By judgment entry filed October 25, 2023, the trial court denied the motion.

{¶ 12} On November 7, 2023, Dover Chemical filed a motion to compel testimony regarding O'Meara's letter.  Dover Chemical sought the discovery of information regarding all communications relating to the subject matter of the letter.  On November 20, 2023, City filed a response, arguing the trial court only granted an in-camera inspection, but did not issue a ruling that City waived its attorney/client privilege regarding the letter.

{¶ 13} On December 26, 2023, the parties each filed motions for summary judgment.

{¶ 14} On January 24, 2024, the trial court filed a judgment entry granting in part Dover Chemical's motion to compel, stating: "It is ORDERED that the City of Dover and its witnesses shall provide testimony relating to all communications which deal with the same subject matter as the 'Council Letter,' and shall be responsible for the costs to re-depose Nicole Stoldt."  On February 23, 2024, City filed an appeal of the interlocutory order (Case No. 2024 AP 02 0008).

{¶ 15} On April 5, 2024, the trial court filed a judgment entry granting City's summary judgment motion as to all of Dover Chemical's claims except the aforementioned Claim III, the non-contractual penalties claim.  The trial court granted Dover Chemical's motion for summary judgment on that claim, finding the Amended Emergency Ordinance passed by City was barred by the Equal Protection Clause.  The trial court found the ordinance was not related to Dover Chemical's status as a customer located outside the municipal jurisdiction, but was to recover funds that were expended

on behalf of Dover Chemical that "were never billed, never charged for, and never invoiced." The trial court found the surcharge was not equally applied to similarly situated entities located outside the municipal jurisdiction and as such, was unenforceable and uncollectable.

{¶ 16} Dover Chemical switched its electric supplier to American Electric Power on April 17, 2023. City charged Dover Chemical the surcharge from March 12, 2021, to April 17, 2023; Dover Chemical paid the amount into escrow, with a balance well over a million dollars.

{¶ 17} On April 22, 2024, City filed an appeal on the summary judgment decision (Case No. 2024 AP 04 0016). On May 23, 2024, the two appeals were consolidated for review. City assigns the following errors:

I

{¶ 18} "THE TRIAL COURT ERRED WHEN IT GRANTED DOVER CHEMICAL CORPORATION'S ('DCC') MOTION FOR SUMMARY JUDGMENT ON ITS CONTRACT CLAIM CHALLENGING THE CITY'S AUTHORITY TO ENACT THE SURCHARGE ORDINANCE (CLAIM III) AND RULED AGAINST THE CITY OF DOVER, OHIO (THE 'CITY') ON ITS DECLARATORY JUDGMENT COUNTERCLAIM (COUNTERCLAIM I) REGARDING THE CITY'S AUTHORITY TO PASS AN ORDINANCE REGARDING MUNICIPAL ELECTRICAL RATES."

II

{¶ 19} "THE TRIAL COURT ERRED WHEN IT ISSUED A DISCOVERY ORDER COMPELLING TESTIMONY ON PRIVILEGED AND PROTECTED COMMUNICATIONS WITHOUT MAKING A FINDING THAT THE CITY HAD WAIVED ANY ATTORNEY-

CLIENT PRIVILEGE WITH RESPECT TO ITS COMMUNICATIONS OR NARROWLY DEFINING THE SCOPE OF ANY WAIVER."

{¶ 20} Dover Chemical filed a cross-appeal and assigned the following error:

CROSS-ASSIGNMENT OF ERROR I

{¶ 21} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON DCC'S CLAIM FOR UNJUST ENRICHMENT."

I

{¶ 22} In its first assignment of error, City claims the trial court erred in granting summary judgment to Dover Chemical, finding the Amended Emergency Ordinance was barred by the Equal Protection Clause and the assessed surcharge was unenforceable and uncollectable, and in denying its claim that it had the authority to pass such an ordinance.  We disagree.

{¶ 23} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly

in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 24} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has

no evidence to support the nonmoving party's claims.  If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.  However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."   The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 25} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court*. Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 26} On March 12, 2021, City enacted Amended Emergency Ordinance 29-20 to reset the rates for electrical use provided by City via Dover Electric Light and Power. The ordinance states that Dover Chemical has been receiving services that were not invoiced and billed in accordance with City's regulations; City has provided maintenance, service, equipment, and materials beyond the primary meter without cost to Dover Chemical.  *See* Amended Emergency Ordinance 29-20, attached to Dover Chemical's December 26, 2023 Motion for Summary Judgment as Exhibit G.  The ordinance acknowledged "partial charges" had been assessed to Dover Chemical after September 2019 to recoup some of the costs of the provided services, but because the parties could not reach a negotiated resolution, a surcharge would be levied against Dover Chemical

to recoup the services Dover Chemical improperly received.  *Id.*  The surcharge would remain in effect for at least two years and amounted to an additional $0.03125 per kWh over 100,000 kWh per month.  *Id.*  The ordinance stated the surcharge was "justified, reasonable, supported by the evidence, and specifically assessed to partially recoup the value of services, materials, and equipment" provided to Dover Chemical after December 1975.

{¶ 27} Jason Hall, Superintendent of the power plant for Dover Light & Power, testified the next kilowatt hour after the 100,000 kWh did not cost City any more money to supply.  Hall depo. at 92.  He admitted the surcharge starting in the next hour after 100,000 did not "bear any relation at all to the cost to supply that next kilowatt hour."  *Id.* at 93.

{¶ 28} Shane Gunnoe, former City Council President and current Mayor, testified the surcharge number was decided upon because "it was approximately 20 percent" and the number would "recoup 1.1 million."  Gunnoe depo. at 52.  He explained the surcharge was an attempt to recover costs that "had not been properly recovered for the residents of the City of Dover"; council wanted to recoup the money without the added cost of having to file a lawsuit against Dover Chemical.  *Id.* at 52-54, 161.  Because detailed work orders where not taken by City as to the services performed for Dover Chemical, City took the information it had, together with help from outside counsel, and arrived at the 1.1 million-dollar figure, even though the law director had first suggested 2.2 million.  *Id.* at 31, 35, 41, 66-67, 171.  Gunnoe stated there were gap years where no information was located, there was incomplete data, and there were missing logbooks for labor calls; so the 1.1

million was a figure council thought was reasonable and they were comfortable with.  *Id.* at 32, 40-41, 66-67, 150.

{¶ 29} William Abel, Assistant Superintendent of the electric field division for Dover Light & Power, could not give specifics on what services City performed for Dover Chemical.  May 9, 2023 Abel depo. at 42, 69, 84-85.  City never invoiced Dover Chemical for equipment and services that it now seeks to recoup.  *Id.* at 13.

{¶ 30} In its motion for summary judgment, Dover Chemical argued the surcharge was outside of City's ratemaking authority - City could not use its "ratemaking authority as a municipal utility provider to circumvent the Courts and unilaterally impose a surcharge as a *de facto* judgment rather than going through proper means"; the surcharge was "an unenforceable, unilaterally imposed penalty and is therefore invalid."  Dover Chemical's December 26, 2023 Motion for Summary Judgment at 21 and 23.

{¶ 31} In its motion for summary judgment, City argued because the parties did not operate under a contract for the sale/purchase of electricity, it had the authority to enact the ordinance "imposing conditions on its sale of electricity" to Dover Chemical.  City's December 26, 2023 Motion for Summary Judgment at 22-23.

{¶ 32} In order to determine whether the surcharge is improper, we will begin with the general legal framework that City operates within.  Through this, we can better clarify the scope of the rights, responsibilities, and defenses of the parties in reaching a decision. Generally, the threshold inquiry is whether the political subdivision involved has been granted legal authority for its conduct.  With regard to the operation of a public utility, the City's source of authority emanates from the Ohio Constitution, Article XVIII, Sections 4 and 6.

{¶ 33} Section 4 grants municipalities the authority to either contract for utility services or supply those utility services directly to the municipality and its inhabitants. This constitutional grant of authority plainly limits the power of a municipality to provide service to itself or its inhabitants and without additional authority, it would be powerless to supply utility services outside its limits. But Section 6 conditionally expands this authority, allowing a municipally operated public utility to sell its surplus to willing customers outside the municipal limits. R.C. 743.12. In the case of public utility services such as electricity, Section 6 also limits the sale of the surplus to fifty percent of the total available quantity.

{¶ 34} The Supreme Court of Ohio has had the opportunity to construe these provisions in *Toledo Edison Co. v. Bryan*, 90 Ohio St.3d 288 (2000). The Court affirmed that the plain language of these sections limits a municipality to operating the utility for the benefit of its citizens, while allowing it to market its surplus to others. *Id.* at 292. Moreover, these sections broadly prohibit municipalities from entering the general public-utility business outside its boundaries to compete with other entities. *Id.* at 292-293, citing *Wilson v. Hance*, 169 Ohio St. 457, 461 (1959). This means in the unincorporated areas of the state, municipal utility service is exceptional while the default providers of utility services to those inhabitants are private for-profit entities, not-for-profit entities, such as electric cooperatives, county water and sewer entities under Chapter 6103 and 6117, and regional water and sewer providers under Chapter 6119.

{¶ 35} It follows that if municipal supplied utility service in the unincorporated areas are not favored, then municipalities are not required to extend its service to any property owner or business merely upon a request. In these situations, the judiciary has

recognized that a municipality may extend service upon an express contract with a particular user or in accord with general legislation that regulates the use and rates of its utility services to extraterritorial customers.  *See City of Hudson v. City of Akron,* 2017-Ohio-7590, ¶ 13 (9th Dist.); *Bakies v. City of Perrysburg,* 2004-Ohio-5231, ¶ 38 (6th Dist.); *Xenia v. State*, 140 Ohio App.3d 65 (10th Dist. 2000).  Here, there is no dispute that Dover Chemical is situated outside the municipal limits.  Despite this, it does not appear that service was extended upon an express, written agreement; the parties have not produced any such contract.  As a result, we must next consider what, if any, restrictions there are on the rates a municipality charges to extraterritorial customers such as Dover Chemical.

{¶ 36} The Supreme Court of Ohio has held that when a municipality extends its utility service to noninhabitants, it does so only in its propriety capacity and is limited to a reasonable profit.  *See Orr Felt Co. v. City of Piqua*, 2 Ohio St.3d 166, 170 (1983).  But a municipality is prohibited from achieving a reasonable profit via unjust discrimination between the extraterritorial customers served.  *Id.* at 170-171.  The key aspect of this qualification is the discrimination must be unjust.  While a municipality is free to classify extraterritorial customers into different rate groups, it must do so by a neutral, objective criteria by which its decision can be fairly reviewed.  It is not unjust if a rate difference is based upon a "'reasonable and fair difference in conditions that equitably and logically justify a different rate.'" *Fairlawn Manor, Inc. v. City of Akron*, 1987 WL 9470, *2 (9th Dist. Apr. 8, 1987), quoting 12 McQuillin, The Law of Municipal Corporations (3 Ed.Rev.1986) 285-287, Section 34.101.  For the reasons that follow, we find the amended rate charged to Dover Chemical is both unreasonable and unjust for at least three reasons.

{¶ 37} First, the rate charged to Dover Chemical is an unreasonable profit because it is unjustifiably disproportionate to the rate it charges to municipal residents.  In order to determine whether the rate set forth in Amended Emergency Ordinance 29-20 represents reasonable profit, we first turn to Article XVIII, Section 6.  The overwhelming purpose of any municipal utility is to provide that service to its own inhabitants.  So, the rate it charges to its residents must, at a minimum, cover the cost of supplying the current level of service; otherwise it would operate at a loss and require taxpayer subsidy.  The other constituent of the rate is the profit.  The sum charged in excess of that cost would be the profit, which becomes our particular focus.

{¶ 38} The ordinance sets out industrial rates.  The rate for anything over 100,000 kWhr, per kWh, is $0.08782.  From our review of the record, it does not appear that City attempted to determine its cost to produce electricity, the profit it received from residents, or even the surplus available to sell to Dover Chemical.  Council's approach was, at best, ad hoc.  From our review, it appears that council focused on the gross amount it wanted to collect from Dover Chemical, debated that figure, and ultimately fixed the agreed upon amount by legislation.  Rather than a reasoned inquiry guided by facts such as production costs, capital costs, maintenance costs, employee costs, financial projects, and so on, the process used is fairly described as arbitrary and capricious.  For example, it seems that council proceeded to fix the rate without any sort of professional study or report that would have supported the rate ultimately set by council.  It is entirely unclear how the proposed rate increase was arrived at originally and why the accepted recoupment amount (1.1 million) was half of what was originally suggested by City's law director (2.2 million).

{¶ 39} We also note that regulated utilities are usually precluded from increasing rates to recoup past expenses.  *In re Application of Columbus S. Power Co.*, 2011-Ohio-1788, ¶ 11.  Although that judicially created rule arose in the context of utilities regulated by the Public Utilities Commission, there is a strong argument that when a municipality enters the marketplace to sell its surplus to nonresidents, such a rule should be extended to the municipality.  As we discuss below, if we were to impose such a rule, we would likewise extend that rule precluding a claim of unjust enrichment too.  *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.,* 166 Ohio St. 254 (1957).  It is doubtful that Article XVIII, Section 6, would allow a municipality to recoup past expenses through what amounts to a de facto retroactive rate increase.

{¶ 40} In sum, the rate setting process lacks sufficient indicia of reasonableness. In light of Article XVIII, Section 6, we do not find the record sufficiently supports sustaining the rate imposed on a non-residential customer.[1]

{¶ 41} Second, even if we look past the extraterritorial issue arising from Article XVIII, Section 6, we still find the rate was unreasonable.  The ordinance singled out Dover Chemical and imposed a surcharge: "For kWh's billed over 100,000 per month, DCC [Dover Chemical] shall be assessed an additional surcharge above the industrial rate listed above in section II C of this ordinance or all kWh above 100,000 kWh of $0.03125 per kWh over 100,000 kWh per month."  Amended Emergency Ordinance 29-20, attached to Dover Chemical's December 26, 2023 Motion for Summary Judgment as Exhibit G.

---

[1]It may also be the case that this rate exceeds the 10% limit set by R.C. 743.13.  Although the Supreme Court found this statute unconstitutional in *State ex rel. McCann v. Defiance,* 167 Ohio St. 313 (1958), it appears it overruled that precedent in *City of Columbus v. Teater,* 53 Ohio St.2d 253 (1978).

The ordinance stated the surcharge was "specifically assessed to partially recoup the value of services, materials, and equipment" provided to Dover Chemical after the prior ordinance and regulations.

{¶ 42} The record demonstrates the rate was unjust and discriminatory.  *Orr Felt*, 2 Ohio St.3d at 170-171.  Dover Chemical was singled out of all other users.  The record does not support City's argument that the assessed rate was reasonable; in fact, the record supports the conclusion that Dover Chemical was charged an arbitrary surcharge.

{¶ 43} Third, even if we were to disregard the lack of evidence to find the rate was reasonable and just, City would be estopped from seeking to recover costs decades after the fact.  As discussed above, the general rule is that the extraterritorial extension of utility services should be upon terms agreed to by the user and the municipality and then memorialized.  *City of Hudson,* 2017-Ohio-7590 (9th Dist.); *Bakies,* 2004-Ohio-5231 (6th Dist.); *Xenia*, 140 Ohio App.3d 65.  In the ordinary case, the public purpose for constructing improvements to facilitate extending utility services to a nonresident user would be indirect or nonexistent.  So, in the ordinary case, we would expect private—not public—funds be used to pay for the necessary improvements.

{¶ 44} Ordinarily, the cost of extending surplus municipal utility services would not be paid with public funds; instead, the costs would be paid by the property owner or the end user.  R.C. 743.13.  This is because public funds are held in trust for the public by public bodies and their officers, and those funds can be disbursed only upon clear authority.  *State ex rel. Hall v. Board of Trustees of Police Relief & Pension Fund of City of Lakewood*, 149 Ohio St. 367, 376 (1948), citing *State ex rel. Smith, Pros. Atty., v. Maharry*, 97 Ohio St. 272, paragraph one of the syllabus.  As discussed above, City

extended these services without an express agreement with Dover Chemical.  And it appears it expended public funds to do so.  Despite R.C. 743.13, we will assume here that it was proper for City to extend these services, pay to construct the improvements, and then pay to maintain these improvements.  So, the issue before us is did City wait too long to recoup these public funds from Dover Chemical.  We think so.

{¶ 45} We begin by remarking that because the City waited so long to recoup these costs, detailed figures and records relating to the cost of providing these services have been lost or destroyed.  Moreover, memories of those involved at the beginning have faded and people with personal knowledge of the initial agreement have sought other employment or died.  And it is difficult to recover what the respective understandings and verbal agreements of the parties were at the time of the endeavor.

{¶ 46} This is the sort of situation where we might ordinarily apply estoppel or laches.  *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Educ.*, 42 Ohio St.3d 86, 90, (1989); *State ex rel. Pennington v. Bivens*, 2021-Ohio-3134, ¶ 24-26.  Rather than bring suit and possibly lose on these doctrines or because of the statute of limitations, City imposed a surcharge.[2]  Accordingly, we hold City waited too long to impose this surcharge, assuming it was ever lawful to impose.

{¶ 47} We now turn to Dover Chemical's argument that this surcharge violated the Equal Protection clause of the Fourteenth Amendment.  We agree with the trial court that it does.  The trial court made these findings: the surcharge did not apply to similarly situated persons outside of the municipal limits; City's intent was to pass an ordinance

---

[2]There is further reason to doubt the appropriateness of this surcharge when it approximates a special assessment but avoids any of the statutory burdens of R.C. Ch. 727.

that only applied to Dover Chemical; the ordinance was motivated by improper discrimination and had a discriminatory effect; and the ordinance violated the equal protection clause.  We turn to the standard in evaluating these claims under the equal protection clause.

{¶ 48} The Equal Protection Clause of the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  The Equal Protection Clause in the Ohio Constitution is fundamentally equivalent to the federal guarantee and is analyzed under the same standard.  Ohio Const., art. I, § 2.  "When the government treats similarly situated individuals differently, that action implicates the Equal Protection Clause."  *Mariemont Apt. Assn. v. Village of Mariemont*, 2007-Ohio-173, ¶ 27.  As explained in *Mega Outdoor, L.L.C. v. Dayton,* 2007-Ohio-5666, ¶ 58:

> Facially neutral legislation may be subject to equal protection attack where the statute or ordinance has been implemented in a discriminatory fashion.  When challenging the application of a facially neutral statute or ordinance, the plaintiff must establish (1) that the application had a discriminatory effect, i.e., that similarly situated persons or entities were treated differently, and (2) that the unequal application was motivated by a discriminatory purpose.

{¶ 49} And when reviewing an equal protection claim, we do so under a rational basis review.  *Holloway v. Brown*, 62 Ohio St.2d 65, 75 (1980).

{¶ 50} We agree with the findings of the trial court.  And, as we found above, the surcharge was an unreasonable attempt to recoup past expenses.  We find this conduct also violates the equal protection clause.

{¶ 51} Upon review, we find the trial court did not err in granting summary judgment to Dover Chemical.

{¶ 52} Assignment of Error I is denied.

II

{¶ 53} In its second assignment of error, City claims the trial court erred when it issued a discovery order compelling testimony on privileged and protected communications without making a finding that the city had waived any attorney-client privilege with respect to its communications.  We disagree.

{¶ 54} This argument centers on the Law Director's letter that was sent to the newspaper, but was not disclosed in discovery.  Dover Chemical requested an in-camera inspection, claiming City withheld production of the letter claiming attorney-client privilege, but had provided the letter to the newspaper.  City argues it never claimed privilege over the letter.  Appellant's Brief 32.  Thereafter, Dover Chemical filed a motion to compel the discovery of information regarding all communications relating to the subject matter of the letter.  The trial court granted the motion in part, ruling City "shall provide testimony relating to all communications which deal with the same subject matter" as the letter.  *See* Judgment Entry filed January 24, 2024.

{¶ 55} The trial court's decision was not overly broad, it limited testimony to communications which dealt with the same subject matter as contained in the letter, a letter City claims was never privileged; if the letter was never privileged, then the subject

matter within the letter was not privileged.  City does not set forth any harm it received from the ruling.

{¶ 56} Upon review, we do not find the trial court erred in its discovery order.

{¶ 57} Assignment of Error II is denied.

CROSS-ASSIGNMENT OF ERROR I

{¶ 58} Dover Chemical claims the trial court erred in granting City's summary judgment motion on its unjust enrichment claim.  We agree.

{¶ 59} Dover Chemical explains "City's Electric Service Regulations make a distinction between primary metered customers who maintain their own equipment and primary metered customers that do not by affording a credit of $0.220 per kVA for those that do."  Appellee's Brief at 33.  Although Dover Chemical was required to maintain its own equipment after 2003, it never received the credit and thus City was unjustly enriched.

{¶ 60} It is undisputed that Dover Chemical did not receive a credit.  Dover Chemical argues in analyzing its unjust enrichment claim, the trial court erred in finding its motion raised "new allegations of unjust enrichment for the first time; however, those claims are not properly before the Court."  *See* Judgment Entry filed April 5, 2024, at 24.

{¶ 61} It is unclear what the trial court thought the "new allegations" were.  From our review of the record, it appears the trial court dismissed the claim because of an argument made in the summary judgment motion.  We conclude the argued allegations were sufficiently contained within the pleadings and dismissing the claim was improper.  We believe Dover Chemical sufficiently stated a cause of action.  Whether Dover Chemical can meet the summary judgment standard remains to be seen.

{¶ 62} As a result, we remand this claim to the trial court for consideration under the summary judgment standard.  The trial court may permit any additional briefing or discovery it determines is appropriate.  It may consider, as it deems appropriate, any additional legal defenses the City may raise, such as the precedent limiting recovery of a rate payer against a public utility under an unjust enrichment claim, which we briefly discuss in ¶ 39.

{¶ 63} Upon review, we find the trial court erred in granting summary judgment to City on Dover Chemical's unjust enrichment claim.

{¶ 64} Cross-Assignment of Error I is granted.

{¶ 65} The judgment of the Court of Common of Tuscarawas County, Ohio is hereby affirmed with regard to City's appeal and reversed with regard to Dover Chemical's cross-appeal.  The matter is remanded to the trial court.

By King, J.

Gwin, P.J. and

Wise, J. concur.